# The Richelieu Hotel Company

## v.

## International Military Encampment Company, for use, etc.

*Filed at Ottawa January 18, 1892.*

1. SUBSCRIPTION—*to prospective corporation—whether enforcible.* A subscription to an association in contemplation of its becoming incorporated is in the nature of a continuing offer, and it ripens into a binding contract when the corporation, after becoming incorporated, accepts the offer. If an incorporation is expected or intended to be had, a subscription to it may be enforced by the corporate body after its organization.

2. A subscription to a contemplated corporation is not incomplete, when accepted and acted upon by the corporation after its organization, until notice of acceptance is given, but is binding, after acceptance and the incurring of liabilities on its faith, unless revoked before acceptance.

3. Where a subscription is made to a corporation before its actual incorporation, its acceptance may be inferred from its conduct in retaining in its possession the subscription paper, and expending sums of money on the faith of it. No formal acceptance is necessary.

4. SAME—*when revocable.* After the acceptance of a subscription, and the expenditure of considerable sums and incurring of liabilities and obligations on the faith of the same, it will be too late for the subscriber to revoke his subscription.

5. SAME—*consideration.* The real consideration on which the plaintiff is entitled to recover upon a subscription is, that it has expended money, furnished materials or labor, or incurred liabilities therefor, on the faith of the undertaking of the subscriber. Any special benefit to the promisor is not necessary as a consideration. This rule applies whether the corporation for whose benefit the subscription was made is one for pecuniary profit or not for such profit.

6. SAME—*by corporation—whether ultra vires.* A subscription by an incorporated hotel company to a contemplated corporation for the purpose of establishing and holding in or near a city in which the hotel company is located and transacts its business, an international military encampment, which might bring large numbers of strangers to the city and thus largely increase the business of all the hotels therein, is not so foreign to the business of keeping hotel as to call for the application of the doctrine of *ultra vires.*

7. SAME—*suit to recover upon—instruction as to burden of proof.* In an action upon a subscription by one corporation to another, in which the general issue was filed, and accord and satisfaction, fraudulent representations and failure of consideration were interposed, the court instructed the jury that plaintiff was bound to make out its case by a preponderance of the evidence upon every material point, and that if, in weighing the evidence, they thought that the evidence upon any point necessary to a recovery by the plaintiff was evenly balanced, or preponderated ever so slightly in favor of the defendant, they should find for the defendant: *Held,* calculated to mislead, as there were affirmative issues in respect to the special defenses as to which the burden of proof was upon the defendant.

8. SAME—*suit upon—denying authority of president of corporation to make.* In a suit against an incorporated hotel company upon a subscription in its name by its president, if there is no plea, verified by affidavit, denying the execution of the instrument, the authority of the president to sign the paper can not be questioned.

9. SAME—*construction of—whether figures mean dollars.* Where the terms of a subscription paper are such as to show on its face that it is a paper for the subscription of money, the figures set opposite the names of the subscribers will be construed to mean their amount in dollars.

10. Where figures are used in a contract intending to represent money, they will be presumed to represent dollars, unless a different intention is clearly expressed. So a subscription of "1000" in money must *prima facie* be taken to be a subscription of $1000.

11. CONSTRUCTION—*applying rules of, to contracts.* In case of contracts, construction is always permissible for the purpose of arriving at the intention of the parties, and in applying the rules of construction everything in the entire instrument may be considered. If, from the whole instrument, the intention of the parties can be discovered, that intention will be enforced, however imperfectly it may be expressed in portions of the contract.

12. ACCORD AND SATISFACTION—*acceptance—instruction concerning.* Where defendant gave plaintiff $100, which was claimed as accord and satisfaction, and there was no evidence of any acceptance of that sum in satisfaction except when it was paid, there will be no error in modifying an instruction by the insertion of the words" then and there," after the statement of the offer to pay such sum, and the acceptance thereof in satisfaction.

13. PLEA—*of fraud and circumvention.* A plea that the execution of the subscription sued on was obtained by fraud and circumvention, which fails to show that any trick, device or artifice was resorted to to procure the defendant's signature, or that the defendant, at the time it

was signed, did not know precisely what he was doing, and did not sign the instrument knowingly and understandingly, and with the intention of executing the paper he did execute, but only shows fraud as to the consideration, is bad on demurrer.

14.    The rule is well settled that this defense can be sustained only by evidence of fraud or covin in relation to the execution of the instrument, and not by evidence of fraud in relation to the consideration on which it is based.

15.    Practice—*variance, how availed of.* Under our present practice, if a party wishes to insist upon a variance between the allegation and proof, he must point out the variance specifically, so as to afford an opportunity of obviating the objection by amendment. The objection comes too late when made for the first time on appeal.

16.    Same—*consent to the right to prove any matter of defense available if properly pleaded after demurrer to plea is sustained.* Where the court, in sustaining a demurrer to a plea of total failure of consideration, by consent of the parties gives the defendant the right to prove any matter of defense which would be available if properly pleaded, the defendant can not complain of the ruling sustaining the demurrer, as he is in no manner prejudiced thereby.

Appeal from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. Elliott Anthony, Judge, presiding.

Mr. S. K. Dow, and Mr. Josiah Burnham, for the appellant:

Until acceptance, a subscription is inchoate, not binding, and may be revoked. 1 Wharton on Contracts, sec. 16; *Pratt* v. *Trustees,* 93 Ill. 475.

Appellant had the right to withdraw its subscription.

Misrepresentations of agents in soliciting subscriptions of stock render such subscriptions voidable. *Kent County* v. *Wilson,* 5 Houst. 49.

If a project is not carried out according to the terms of the prospectus or the public announcement of the projectors, subscribers who have paid money may recover it back. *Nockells* v. *Crosby,* 5 D. & R. 760; 3 B. & C. 824; *Chaplin* v. *Clarke,* 4 Exch. 403; *Walstab* v. *Spottswoode,* 15 M. & W. 501; *Johnson* v. *Gossette,* 3 C. B. N. S. 594; 27 L. J. C. P. 122.

Misrepresentations of committee-men and managers render subscriptions voidable. *Wontner* v. *Shairp*, 4 C. B. 404; 4 Ry. Cas. 542; *Cridland* v. *Lord D. Manley*, 17 L. J. Ch. Div. 190; *Nichol's case*, 3 DeGex & J. 440; *Hill* v. *Lane*, L. R. 11 Eq. 215; 40 L. J. Ch. Div. 41; *Ship* v. *Crosshill*, L. R. 10 Eq. 73; 39 L. J. Ch. Div. 550; *Hughes* v. *Manufacturing Co.* 34 Md. 316; *Vawter* v. *Railroad Co.* 11 Ind. 174; *Railroad Co.* v. *Scoggin*, 3 Ore. 161; *Railroad Co.* v. *Cross*, 20 Ark. 443; *Ferry Co.* v. *Jones*, 39 N. H. 491; *Railroad Co.* v. *Walters*, 34 Me. 369; *Railroad Co.* v. *Bailey*, 24 Vt. 477; *Concord Bank* v. *Gregg*, 14 N. H. 231; *N. Y. Ex. Ch. Co.* v. *DeWolf*, 31 N. Y. 273; *Butler* v. *Watkins*, 13 Wall. 456; *Crump* v. *Mining Co.* 7 Gratt. 352; 1 Wharton on Contracts, secs. 276-277.

This subscription contract on the part of appellant was *ultra vires*.

There is no implied authority in a corporation, or any of its agents, to transfer or give away any of its funds or property gratuitously. 1 Lawson's Rights, Remedies and Practice, par. 403; Morawetz on Corporations, sec. 232.

A contract by a railroad company to guarantee the expenses of a musical festival is *ultra vires*. So is the same contract by a corporation chartered to manufacture and sell musical instruments. 1 Lawson on Rights, Remedies and Practice, par. 398; *Davis* v. *Railroad Co.* 131 Mass. 258; 41 Am. Rep. 236; *Coleman* v. *Railway Co.* 10 Beav. 1.

Corporations can only act in the manner and for the purposes named in the articles of incorporation. Field on Corporations, secs. 246, 247.

Appellee could not maintain suit on this subscription paper. The evidence on both sides fixes the time of this subscription as the middle of March, 1887. The plaintiff (appellee) was not incorporated until April 25, 1887. It was therefore impossible for any contract relation to exist between appellant and appellee. *Stowe* v. *Flagg*, 72 Ill. 397; *Bigelow* v. *Gregory*, 73 id. 197; *Gent* v. *Insurance Co.* 107 id. 652.

Appellant's refused instructions should have been given. The evidence in this case was conflicting. Appellant was therefore entitled to an instruction as to where the burden of proof lay. It was upon many points a close case, and therefore required full, clear and accurate instructions. *Volk* v. *Roche,* 70 Ill. 297; *Cushman* v. *Coggswell,* 86 id. 62; *Railway Co.* v. *Henks,* 91 id. 406; *Bowman* v. *Wettig,* 39 id. 416.

Messrs. Cratty Bros., for the appellee:

A party objecting to a paper for variance must at the time specify the point, so that the pleadings may be amended, if necessary.

Any word, mark, line, dot or sign which shows with reasonable certainty that the parties intended the figures to represent money, is sufficient. *Gilpatrick* v. *Foster,* 12 Ill. 355; *Hunt* v. *Smith,* 9 Kan. 140; *Hines* v. *Chambers,* 29 Minn. 7; *DeLarkmert* v. *Sellwood,* 10 Ore. 319; *Booth* v. *Wall,* 2 Root, 247; *Northrop* v. *Sanburn,* 22 Vt. 433; *Murrill* v. *Handy,* 17 Mo. 406; *State* v. *Schwartz,* 6 Wis. 432.

A subscription contract promising aid to some projected enterprise not unlawful, is binding on the promisor, even though he do not derive or expect to derive any benefit therefrom. The doing of work or expending money on the faith of such subscription is a sufficient acceptance and consideration, and the party doing such work or expending the money may recover. 1 Parsons on Contracts, (6th ed.) 452; *M. E. Church* v. *Kendall,* 121 Mass. 528; *Thompson* v. *Supervisors,* 40 Ill. 379; *Hudson* v. *Seminary,* 113 id. 618; *McClure* v. *Wilson,* 43 id. 356; *Robertson* v. *March,* 3 Scam. 198; *Cross* v. *Mill Co.* 17 Ill. 54; *Railroad Co.* v. *McNeely,* 21 id. 71; *Pryor* v. *Cain,* 25 id. 292; *Griswold* v. *Trustees,* 26 id. 41; *Trustees* v. *Garvey,* 53 id. 401; *Pratt* v. *Trustees,* 93 id. 475; *Vierling* v. *Horton,* 27 Ill. App. 263; *Baptist Society* v. *Carter,* 72 Ill. 247; *Hall* v. *City,* 91 id. 535.

A corporation in contemplation at the time of the subscription, becoming thereafter incorporated and expending money and labor on the faith of the subscription, may become payee and maintain suit upon the subscription contract. *Snell* v. *Trustees,* 58 Ill. 290; *Griswold* v. *Trustees,* 26 id. 41; *Miller* v. *Ballard,* 46 id. 377; *Railroad Co.* v. *McNeely,* 21 id. 71; *Cross* v. *Mill Co.* 17 id. 54; *Johnston* v. *University,* 35 id. 518; *Hudson* v. *Green Hill Seminary,* 113 id. 618.

If a subscription be made payable to the "treasurer" of a corporation, it is payable to the corporation, and the corporation may maintain suit therefor. *Friedline* v. *Board of Trustees,* 23 Ill. App. 494.

Where advances have been made or expenses or liabilities incurred by others in consequence of such subscriptions, before any notice of withdrawal, this should, on general principles, be deemed sufficient to make them obligatory, provided the advances were authorized by a fair and reasonable dependence on the subscriptions, and this rule seems to be well established. *Thompson* v. *Supervisors,* 40 Ill. 379.

After work has been done or money expended on the faith of such a subscription, it is too late to withdraw it. *Thompson* v. *Supervisors,* 40 Ill. 379; 2 Morawetz on Corporations, secs. 655, 689.

Any one advancing money or performing labor on the faith of such a subscription, where no payee is named and limited, may become payee and maintain action. *Miller* v. *Ballard,* 46 Ill. 377; *McClure* v. *Wilson,* 43 id. 356; *Hall* v. *City,* 91 id. 535; *Griswold* v. *Trustees,* 26 id. 41; *Thompson* v. *Supervisors,* 40 id. 379.

The making of such a subscription by such a corporation is not *ultra vires.* On the contrary, it is in the proper line of operating a hotel in a large city. 1 Morawetz on Corporations, secs. 424, 362-367; Green's Brice's Ultra Vires, 89, 90, 94.

Even though a contract be *ultra vires,* yet after it has been executed by the other party the corporation can not make

that defense. *Building Society* v. *Crowell,* 65 Ill. 453 ; *West* v. *County,* 82 id. 205 ; *Darst* v. *Gale,* 83 id. 136 ; *Railroad Co.* v. *Thompson,* 103 id. 187 ; *Bradley* v. *Ballard,* 55 id. 413 ; *People* v. *Chicago,* 20 Ill. App. 473 ; *Parish* v. *Wheeler,* 22 N. Y. 503.

Mr. Justice Bailey delivered the opinion of the Court:

This was an action of assumpsit, brought by the International Military Encampment Company, for the use of Robert E. Jenkins, receiver, against the Richelieu Hotel Company, upon the following contract :

"Whereas, in pursuance of the wishes of a large number of the prominent citizens of Chicago, an association (of which ex-Gov. John L. Beveridge is president) has been formed for the purpose of inaugurating and carrying out an International Military Encampment, on a large scale, in or near Chicago, in September or October, 1887, which is the semi-centennial year of the city ; and

"Whereas, the successful carrying out of the said encampment and celebration is expected to be of great benefit to the city and its business, and can only be properly and creditably accomplished by the expenditure of large sums of money :

"*Now, therefore,* we, the undersigned, do hereby subscribe the sums set opposite our respective names, and agree to pay the same to the treasurer of the 'International Military Encampment Company of Chicago, Illinois,' upon the call of the directors of the said company, the sums so subscribed and paid to be used at the discretion of the said directors in carrying out the said encampment and celebration, and in the event of the amount of money so subscribed being deemed by the directors to be insufficient for carrying out said encampment in all its details, the subscriptions hereto made shall not be binding upon the subscribers :

Opinion of the Court.

| NAMES. | AMOUNTS |
|---|---|
| Palmer House (two thousand) | 2000 |
| The Richelieu Hotel Co., H. V. Bemis, president | 1000 |
| McCoy's Hotel, William McCoy | 500 |
| Leland Hotel, Warren F. Leland | 1000 |
| Briggs House, Frank Murran | 3000 |
| Commercial Hotel, C. W. Dabb & Co | 500 |
| Drake, Parker & Co | 1500 |
| H. M. Kinsley | 500 |
| Thompson's Restaurant, A. Cummings | 500 |
| Willoughby, Hill & Co | 500 |
| Charles Kern | 300 |
| H. H. Kohlsaat | 500 |
| Rector's Oyster House | 150 |
| Wm. Werner & Co | 200 |
| E. B. Smith | 200 |
| Lansing & Sickler | 200 |
| Race Bros | 150 |
| A. Booth & Son | 100 |
| Sturckow & Kadish (Vienna Bakery) | 100 |
| A. B. Young, Anna House | 50 |
| E. A. Bachelder, Southern Hotel | 200 |
| J. W. Boardman & Co., Hotel Woodruff | 200 |
| Albaugh House, Albaugh & Carr | 150 |
| Hotel Brevoort, Field & Hubbard | 200 |
| J. M. Haslett & Co., Deming Hotel | 100 |
| C. Pirrung, Massasoit Hotel | 100 |
| Raggio Bros., St. Charles Hotel | 100 |
| E. Philbrick & Son, Clarendon House | 100 |

*Restaurants.*

| | |
|---|---|
| Batchelder's Restaurant | 150 |
| Gault House, Roders & Welch | 200 |
| City Hotel, W. F. Orcutt | 100 |
| Columbus Hotel, S. S. Buckley | 100 |
| Washington Hotel, M. J. Henderson (if there) | 100 |
| Farwell House, E. S. Pinney | 100 |
| Hotel Royal, R. E. Gallup | 100 |
| Mrs. M. J. Spiking (pay in Sept.) | 100 |
| D. A. Darley | 100 |
| Thos. A. Dean (conditionally on being in business) | 100 |
| Thos. S. Brown, pay in July and August | 100 |
| N. D. Laughlin, Laughlin's European Hotel | 100 |
| Garden City, George E. Macshane | 100 |
| Brockway & Milan | 150 |
| J. D. Fanning, Revere House | 100 |
| W. J. Kuhns & Son | 100 |

The declaration consists of three special counts. In the first count said subscription paper or contract is set out *in hæc verba*, except that all the signatures and amounts subscribed, other than those of the defendant, are omitted. In the second count said instrument is set out as being, in legal effect, a contract by the defendant to pay the plaintiff the sum of $1000, upon the terms and conditions, and upon the consideration therein stated. The third count sets out the body of said instrument *in hæc verba*, and avers that it was signed by the defendant, by the name and style of "The Richelieu Hotel Co. H. V. Bemis, President. $1000," no reference being made to the subscriptions of the other subscribers. Each of the counts avers an acceptance of said subscription by the plaintiff, the performance on its part of the conditions therein prescribed, and a proper call by it upon the defendant for the amount of said subscription.

The defendant appeared and pleaded *non assumpsit*. Afterward, by leave of the court, an additional plea was filed, purporting to be a plea of fraud and circumvention in procuring the execution by the defendant of said subscription. The fraud and circumvention alleged consisted, in substance, of divers representations and promises by the plaintiff to the defendant as to the nature and extent of the proposed international military encampment, and the number of officers, troops, musicians, etc., who would thus be brought together, and also of a promise by the plaintiff that the defendant's hotel should be and become the headquarters of the officers of the United States, of the several States and of foreign governments participating in said encampment, and the subsequent failure on the part of the plaintiff to keep its said promises by holding a military encampment such as it had represented, or by causing the Richelieu Hotel to become the headquarters of the officers commanding the troops at said encampment. To said plea, a special demurrer, setting up, among other things, that

the matters stated in said plea did not amount to fraud and circumvention, was sustained.

The defendant, by leave of the court, then filed a further plea, setting up a total failure of the consideration of said subscription.    To that plea a demurrer was interposed, and while said demurrer was pending, by agreement of the parties made in open court, an order was entered in the cause that all evidence might be introduced, under the general issue, which might be well pleaded.    The demurrer to said additional plea was thereupon sustained, the court, at the same time and as a part of the same order, repeating the order already entered by agreement, as to the admission of evidence under the general issue.

Upon the issues thus formed, a trial was had before the court and a jury, resulting in a verdict finding the issues for the plaintiff and assessing its damages at $900, and the court, after denying the defendant's motion for a new trial, entered judgment on the verdict.    On appeal by the defendant to the Appellate Court, said judgment was affirmed, and the present appeal is from said judgment of affirmance, the Appellate Court having granted a certificate that the case, although involving less than $1000, involved questions of law which, on account of principal and collateral interests, should be passed upon by this court.

It is insisted that the trial court erred in sustaining demurrers to said pleas.    We think it clear that the first additional plea was insufficient.    It attempted to set up as a defense fraud and circumvention in procuring the execution by the defendant of the instrument sued on, but the fraud set up relates solely to the consideration of said instrument, and not to procuring its execution.    There is no pretense that any trick, device or artifice was resorted to. by the plaintiff to procure the defendant's signature to said instrument, or that the defendant, at the time it was signed, did not know precisely what it was doing, and did not sign the instrument knowingly

17—140 ILL.

and understandingly, and with the intention of executing precisely the instrument·it did execute.    The rule is well settled that this defense can be sustained only by evidence of fraud or covin in relation to the execution of the instrument, and not by evidence of fraud in relation to the consideration on which it is based.    *Woods* v. *Hynes,* 1 Scam. 103 ; *Mulford* v. *Shepard,* id. 583 ; *Adams* v. *Wooldridge,* 3 id. 254 ; *Latham* v. *Smith,* 45 Ill. 25 ; *Shipley* v. *Carroll,* id. 285 ; *Depuy* v. *Schuyler,* id. 306 ; *Clarke* v. *Johnson,* 54 id. 296 ; *Elliott* v. *Levings,* id. 213 ; *Easter* v. *Minard,* 26 id. 494 ; *Hendrix* v. *The People,* 9 Bradw. 42.

Whether the decision of the court sustaining the demurrer to the second additional plea was erroneous or not, it seems clear that the defendant was in no way prejudiced by it.    If it be conceded that a defendant to a suit on a non-negotiable instrument, in order to avail himself of the defense of a total failure of consideration, must specially plead it, the order of court entered by agreement of the parties, giving the defendant a right to prove any matter which would be available if specially pleaded, under the general issue, placed the defendant in quite as advantageous a position as it would have been in if its plea of failure of consideration had been sustained. The order of court entered by agreement of the parties was at least as effectual for the purpose for which it was entered, as a mere stipulation of the parties to the same effect would have been.    In *Carpenter* v. *First National Bank,* 119 Ill. 352, we held that where the parties had stipulated that defenses which could properly be set up by special plea might be introduced under the general issue, the case stood in the same condition as though the general issue, and special pleas properly presenting such defenses, had been pleaded.    The defendant was thus accorded an opportunity of availing itself of the defense attempted to be set up by its plea, just as fully and effectually as it could have done if the demurrer had been overruled.

The next point made is, that the subscription contract should have been excluded on account of a material variance between said instrument and the instrument set out in the declaration. The variance now pointed out is this: The declaration describes said instrument as an agreement by which the defendant undertook and promised to pay the plaintiff, for the consideration therein named, the sum of $1000, setting out the contract of subscription with the defendant's signature and subscription only appended thereto, while the instrument offered in evidence bears the signatures and subscriptions of a large number of other parties besides the defendant, and said instrument, so far as the defendant's subscription is concerned, contains no sign or dollar mark indicating that said subscription was for the sum of money alleged or for any sum of money.

Without pausing to determine whether what is now thus pointed out constituted a material variance, it is sufficient to say, that at the time the subscription paper was offered and admitted in evidence, it was not objected to on the ground of variance, nor was any variance between it and the declaration pointed out or even suggested. Its admission in evidence was objected to on several other specific grounds, but this objection was not made. Under our present practice, if a party wishes to insist upon a variance between the allegation and proof, he must point out the variance specifically, if for no other purpose, for that of enabling the opposite party to so amend his pleading as to make it conform to the evidence offered, and thus avoid defeat upon a point in no way involving the merits of the controversy. *L. S. & M. S. Ry. Co.* v. *Ward,* 135 Ill. 511; *St. Clair Benevolent Society* v. *Fietsam,* 97 id. 474. It is manifestly too late to raise a question of variance for the first time on appeal.

The next contention is, that the plaintiff was no party to said contract of subscription, and that no suit thereon in its name can be maintained. Although said contract is without

date, the evidence tends to show that it was executed by the defendant sometime in March, 1887, and it was admitted at the trial that the plaintiff did not become fully incorporated until April 25, 1887. It is insisted therefore that at the time the subscription was made, the International Military Encampment Company was a mere voluntary association, and that the right of action, if any exists, is in that association, or its treasurer, and not in the corporation afterwards organized under the same name.

In support of this contention appellant further insists that at the time the subscription was made, there was no intention on the part of the promoters of said Military Encampment to form a corporation, and that their organization as a corporation was an after-thought, and there is some evidence lending countenance to that theory. On the other hand there seems to us to be evidence, to be derived in part from the phraseology of the subscription contract, but mainly from the surrounding circumstances, tending to show that it must have been the original intention of the promoters of said enterprise to carry it on by means of a corporation to be organized as soon as the requisite subscriptions should be obtained, under the name adopted in the subscription contract. It thus appears that the question here suggested was a mere question of fact, which, by the judgment of the Appellate Court, is conclusively settled adversely to the appellant, and for all the purposes of this appeal it must be assumed that the formation of a corporation under the name adopted was contemplated from the first.

The case then, as presented here, is one of a subscription, not to an existing, but to a contemplated corporation, and the question is, whether such subscription is enforcible by the corporation after it comes into being. Questions of this character most frequently arise in case of preliminary subscriptions to the capital stock of corporations not yet organized, and it is held that such subscriptions are in the nature of continuing

offers to take stock upon the organization of the corporation, and they ripen into binding contracts when the corporation, after becoming a corporate body, accepts the offer.  *Cross* v. *Pinckneyville Mill Co.* 17 Ill. 54 ;  *T. & P. R. R. Co.* v. *McNeely,* 21 id. 71 ;  2 Beach on Corporations, sec. 512; and numerous decisions cited in note.

The same principle is held to be applicable to other preliminary contracts.  Thus, in *Johnston* v. *Ewing Female University,* 35 Ill. 518, it was held that a subscription for the building of a university, made prior to its incorporation, but in contemplation thereof, was legal and binding upon the party making it. So, in *Snell* v. *Trustees of M. E. Church,* 58 Ill. 290, it was held to be no defense to a suit to enforce a subscription to aid in building a church, that at the time of the subscription, the society was not incorporated.

But it is said that the evidence fails to show an acceptance of the subscription by the plaintiff after its incorporation. Whether such acceptance took place or not is a mere question of fact which is not open for consideration here.  It may be said however that no formal acceptance was necessary, an acceptance being inferable from the conduct of the plaintiff in retaining the subscription in its possession and expending large sums of money on the faith of it, and these facts the evidence tends to prove.

But it is claimed that before any valid acceptance took place, the defendant recalled its offer, and thus put an end to its liability.  Whether such withdrawal took place, and whether it occurred before the plaintiff had accepted the subscription, are of course questions of fact not reviewable here.  The evidence tends to show, that on the 13th day of September, 1887, and nearly five months after the plaintiff's incorporation, Bemis, the defendant's president, met one of the plaintiff's officers and notified him that the defendant withdrew from its subscription, at the same time producing and delivering to said officer his, Bemis', check for $100, and telling him that

that was all the defendant could do.   But the evidence also tends to show that long before this attempted revocation, the plaintiff, on the faith of this and other subscriptions, had expended considerable if not large sums of money, and had incurred divers liabilities in attempting to secure the attendance at the proposed military encampment of bodies of foreign troops, and in making other preparations for said encampment.   The judgment of the Appellate Court has settled the fact that the plaintiff's acceptance of the subscription was prior to the defendant's attempted withdrawal, so as to preclude all investigation of that question here.

It is also contended that said subscription contract is void for uncertainty, there being no dollar mark or other character showing what was meant by the figures "1000," and therefore that it is wholly uncertain what subscription was intended. This contention we think can not be sustained.   It is clear from the terms of the instrument that the subscription was payable in money, and that money was intended to be subscribed, and nothing else.   The terms of the subscription after reciting that the proposed enterprise could be creditably accomplished only "by the expenditure of large *sums of money*" are, "we the undersigned do hereby subscribe the *sums* set opposite our respective names, and agree to *pay* the same,   *   *   * the *sums* so *subscribed* and *paid* to be used by said directors, *   *   *   and in the event the *amount of money* so subscribed shall be deemed by the directors to be insufficient," etc.   The subscription being *in money*, of which one dollar is the unit, the number expressed in figures must be taken, *prima facie*, to be the number of such units subscribed.   The subscription of 1000 in money must, *prima facie*, be taken to be a subscription of $1000.   This view seems to have been adopted in *Hunt* v. *Smith*, 9 Kan. 140, in which the court says: "Whenever figures are used intending to represent money, such figures must of course be understood to represent dollars, unless a different intention is clearly expressed."

A number of decisions in this State are referred to as holding a contrary doctrine, but those are all cases of judgments, and most of them are cases of judgments for the sale of lands for taxes, and it was there held that a judgment expressing a sum in figures, without any dollar mark or other equivalent word or character was void, upon the principle that all judgments for money should be certain, and find the sum for which they are rendered, and that failing to do so, they are fatally defective. The amount for which a judgment is rendered should be precisely fixed and determined, and should not be left to construction. But this rule manifestly does not apply to contracts. Their construction, for the purpose of arriving at the intention of the contracting parties is always admissible, and in applying the rules of construction, everything within "the four corners" of the instrument may be considered. If from the whole instrument the intention of the parties can be discovered, that intention will be supported, however imperfectly it may be expressed in portions of the contract.

It is next urged that said subscription by the defendant is *ultra vires*. It may be inferred from the name of the defendant corporation that it was organized for the purpose of maintaining and operating a hotel. It also appears from those portions of the defendant's certificate of incorporation read in evidence that the object for which it was incorporated was "to conduct a general hotel business."

In our opinion a subscription for the purpose for which the one in question was made was not beyond the corporate powers as thus shown. The establishment and holding in or near the city of Chicago of an international military encampment upon the plan proposed by the plaintiff, was a scheme likely to bring to the city large numbers of strangers, who, while in the city would necessarily require hotel accommodations, and would thus largely increase the patronage of the various hotels in the city, the defendant's among the rest. Power to carry on the hotel business necessarily carries with it, as an inci-

dent, the power to adopt and promote all reasonable expedients directly calculated to increase the number of patrons of the hotel, such as advertising, employing agents to solicit patronage, running omnibuses and other vehicles to convey guests to and from the hotel, and other similar expedients. Donations of money to enterprises calculated to bring to the city large numbers of visitors from abroad would seem to fall within the same reason.

Perhaps no better practical confirmation of this view can be found than that furnished by this subscription paper, by which the proprietors of most of the leading hotels and restaurants of the city subscribed large sums of money to help secure the holding of the proposed encampment. It is scarcely to be presumed that these men were willing to give their money for the mere purpose of having a military encampment held. Such exhibition of itself was no more to them than to other members of the community. They doubtless subscribed upon business principles and from a business stand-point, and because they believed that by doing so they could best promote their own business enterprises. In view of the practical judgments of these men thus expressed, the courts will hardly undertake to say, that the objects of the subscription were so foreign to the business which the defendant was incorporated to carry on, as to call for an application of the doctrine of *ultra vires.*

The point is made that said subscription was without consideration and therefore void. A consideration may consist of a benefit to the promisor or of a detriment to the promisee. Whether said subscription in fact resulted in a benefit to the defendant or not, it worked a detriment to the plaintiff, in that, on the faith of it, the plaintiff expended money in the promotion of the enterprise for which it was made. In *Hudson* v. *Green Hill Seminary,* 113 Ill. 618, in discussing the consideration of a subscription to a seminary, we said: "His promise to pay was a mere offer until acted upon; but when

money was expended or materials furnished, or labor bestowed, on the faith of it, it became irrevocable, and binding as a promise to pay, and this, although, at the time the writing was executed, the corporation was only in contemplation. The real consideration upon which the plaintiff is entitled to recover, in such cases, is, that it has expended money, furnished materials, or bestowed labor, upon the faith of the promise in writing, and not any special benefit derived or expected to be derived by the promisor from the corporation."

Several questions are raised upon the rulings of the court in the instructions to the jury, most of which, however, are substantially disposed of by what we have already said. Complaint is made of the refusal of the court to give to the jury the defendant's second, third, fourth, fifth, sixth and eighth instructions and in modifying its seventh instruction.

The second instruction was, in substance, that if at the time the subscription was signed, the plaintiff had not been organized as a corporation, there was no contract relation between the parties, and the plaintiff could not recover. That this is not the law sufficiently appears from what has been already said.

The third instruction was to the effect that, if at the time the subscription was signed, the plaintiff was organized and existing as a corporation for profit, under the laws of this State, then the subscription was without consideration and void. We are unable to see how the question of the sufficiency of the consideration was necessarily dependent upon the fact, if it was a fact, that the plaintiff was incorporated for the purpose of holding a military encampment for profit. The sufficiency of the consideration depended upon whether the plaintiff expended money or incurred liabilities on the faith of the subscription, and that might be the case just the same, whether the plaintiff was organized under the statute for pecuniary profit, or not for pecuniary profit.

The fourth instruction sought to raise a question as to the authority of Bemis, the defendant's president, to execute the subscription paper in its behalf so as to bind it. As no plea verified by affidavit, denying the execution of said instrument by the defendant, was filed, the authority of Bemis to sign the paper was not in issue. Under the provisions of the 33d section of the Practice Act, no defendant is permitted to deny, on trial the execution of any instrument in writing, upon which any action may have been brought, without having filed a plea, verified by affidavit, denying its execution. In *Dwight* v. *Newell*, 15 Ill. 333, this section was held to apply to an instrument signed for a corporation by parties purporting to act for it, and the rule was there laid down, that, unless a plea verified by affidavit, putting in issue the authority of the parties signing the instrument was filed, its execution was admitted.

The fifth instruction held that if the plaintiff was a corporation organized under the laws of this State, and if the objects of its organization, as expressed in its articles of incorporation, was to conduct a general hotel business, and that only, the contract sued on was *ultra vires* and void. The unsoundness of this proposition has already been sufficiently shown.

The sixth instruction held that the subscription in question was incomplete in law, until notice to the defendant of its acceptance by the plaintiff, and that until such notice, the defendant had a right, at any time, to withdraw from said subscription, and that if it gave the plaintiff notice of its intention to withdraw before it had received notice of the plaintiff's acceptance, the subscription was not binding. We know of no rule of law which made said subscription inchoate and incomplete, though accepted and acted upon by the plaintiff after its organization, until notice to the defendant of its acceptance by the plaintiff, and counsel has referred us to no authority which so holds. We think the instruction was properly refused.

The eighth instruction was as follows:

"The jury are further instructed, that the plaintiff was bound to make out its case by a preponderance of the evidence upon every material point, and the jury are the sole judges of the weight and preponderance of the evidence, and if in weighing the evidence the jury think that the evidence upon any point necessary to a recovery by the plaintiff is evenly balanced, or preponderates ever so slightly in favor of the defendant, they, the jury, should find for the defendant."

This instruction, in laying down the rule that the burden was on the plaintiff to make out its case by a preponderance of the evidence, announced a correct proposition of law, but its application of that rule to the issues before the jury was such as was likely to mislead them. The case, as submitted to the jury, did not consist solely of issues upon the declaration, but also included affirmative issues raised by the defendant, such as that raised by the defense of accord and satisfaction, of fraudulent representations, and of failure of consideration, and as to those issues the burden of proof was on the defendant. But the instruction held that if on *any point* necessary to a recovery by the plaintiff, the evidence preponderated in favor of the defendant or was equally balanced, the verdict must be for the defendant. The plaintiff could recover only by having every point or issue found in its favor, and that of course included those as to which the burden of proof was on the defendant, and so the instruction seems to throw the burden of proof even as to them on the plaintiff.

The defendant's seventh instruction was given by the court to the jury as follows, the modification complained of consisting of the insertion of the words "*then and there:*"

"If the jury believe, from the evidence, that the president of the defendant corporation, after the signing of the contract of subscription offered in evidence, and before notice of any call for the payment of said subscription, notified the plaintiff or its agents that the stockholders of the defendant corporation,

or some of them, were dissatisfied with said contract, and that said president then offered the plaintiff the sum of $100 in satisfaction of said contract, and that said plaintiff, by its officers or agents, *then and there* accepted such sum of money in satisfaction of said contract, then there is no further liability on said contract, and the jury should find for defendant."

We are unable to perceive any substantial objection to said modification, especially as there is no evidence of any acceptance of said $100 by the officers or agents of the plaintiff in satisfaction of said contract, outside of the evidence of what occurred at the time the $100 was paid by Bemis to an officer of the plaintiff. If that money was ever accepted by the plaintiff in satisfaction of the subscription, such acceptance, so far as the evidence shows, was then and there, to-wit, at the time the money was paid.

The defense set up based upon the alleged representations and promises made to the defendant by the agents of the plaintiff at the time the subscription was made, presents mere questions of fact in relation to which the evidence is conflicting and which are not reviewable here. So also of the defense of accord and satisfaction sought to be made out from the occurrences at the time the $100 was paid, was held by the Appellate Court, as well as by the jury in the trial court, not to be proved. Whether it was or not is a question of fact as to which the judgment of the Appellate Court is final.

After carefully considering the entire record, we are of the opinion that it is free from substantial error, and the judgment of the Appellate Court will therefore be affirmed.

*Judgment affirmed.*