[Civ. No. 785.   First Appellate District.—October 3, 1910.]

EMMA L. McQUAIDE, Respondent, v. ENTERPRISE BREWING COMPANY, a Corporation, Appellant.

Corporations—Lease of Land for Building—Authority—Control of Building — Payment of Rent — Final Dispute — Corporation Bound.—A written lease of land agreed to be taken by the trustees of a corporation duly assembled, but without a formal resolution, which was executed in the corporate name, and under the corporate seal, by its president and secretary, the rent of which was to begin when a building to be erected upon the land, for the use of the corporation, was completed, which then controlled and sublet the building, and paid rent under the lease for fifteen

months, and then for the first time disputed its authority to make the lease, and refused to pay more rent, is binding upon the corporation. Honesty and fair dealing require that the corporation be held to the terms of the lease, and it may be enforced by the lessor against it.

Id.—Formal Resolution of Directors not Essential to Authorize Lease—Proof of Votes by President.—Under the circumstances disclosed by the record, it was not necessary to show a formal resolution in writing, signed by the board of directors, authorizing the lease. The testimony of the president, who was at the meeting of the trustees, that the lease was both authorized and ratified by the trustees, is sufficient evidence of authority.

Id.—Doctrine of Ultra Vires—Distinction Between Executory and Executed Contracts.—The doctrine of *ultra vires* as applied to executory contracts of a corporation, in violation of its charter or entirely outside of the scope and purpose of its creation, is regarded very differently than it is when it is relied upon by a corporation as a shield to escape just liability under an executed contract. In such case, it is regarded with disfavor; and the rights of the party with whom the corporation has made the contract and the consequences to him will be carefully weighed before the court will hold the contract void.

Id.—Reception of Benefits Under Executed Contract—Estoppel in Pais.—In passing upon the claim of *ultra vires*, as applied to executed contracts, the courts will simply consider the facts as to the circumstances of the contract, as to whether or not the corporation has received benefits under it; as to whether or not the doctrine of estoppel *in pais* may be invoked.

Id.—Policy of Law—Contracts of Corporations.—It is the policy of the law and the endeavor of the courts to hold corporations as well as natural persons to their contracts, and make them liable for the obligations they have incurred. The rule is based upon the strongest principles of justice and public policy, that a contract should be enforced against a corporation when it has received the consideration or the benefits of the contract.

Id.—Contracts not Enforceable—Doctrine of Ultra Vires Limited. As to contracts of corporations that are *malum in se*, or *malum prohibitum*, they will not be enforced; but as to contracts not thus objectionable, justice and public policy require that the doctrine of *ultra vires* should be limited in its scope and application.

Id.—Lease Necessary for Business of Corporation not Ultra Vires.—A lease of property which is at all times reasonably necessary for the transaction of the business of the corporation lessee, as a builder upon the leased premises, and for the purpose of subletting the building in the legitimate transaction of its business, is not *ultra vires*.

ID.—Legitimate Purchase of Lot for Building—Legitimate Lease for Like Purpose.—Where it would not have been unlawful for the corporation to have purchased a lot and erected a building upon it so as to have a place in which to dispose of its wares, it was not unlawful to lease a place and erect a building thereupon for the transaction of business germane to the purposes of the corporation and not foreign thereto.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Thos. F. Graham, Judge.

The facts are stated in the opinion of the court.

L. S. Melsted, and Richard O'Connor, for Appellant.

R. F. Mogan, and Leon Samuels, for Respondents.

COOPER, P. J.—This action was brought to recover of defendant corporation the sum of $500 for rent of the premises described in the complaint for the month ending November 30, 1908. The case was tried before the court without a jury, and findings filed, in which judgment was ordered for the plaintiff in the amount claimed.

The first contention of appellant is that the defendant corporation never leased the premises from the plaintiff, and hence is not liable for rent of said premises. This was one of the issues made by the pleadings, and the court found in favor of the plaintiff, to the effect that the defendant did execute the lease and that it thereafter entered into possession of the premises and has ever since remained in such possession; and "that the signatures of the president and secretary of said corporation to said lease were not without authorization on the part of said corporation defendant, and are not *ultra vires* or null or void, but, on the contrary, each of said signatures was affixed to said lease with the authorization of said corporation defendant."

We have carefully examined the evidence, and find that it supports the findings in this regard. The evidence shows without conflict that the lease was in writing, signed in the corporate name and under the corporate seal of defendant, by its president and secretary, with their several official designations attached. That the land was vacant when the lease

was made, and that plaintiff erected a building thereon at a cost of $27,000, according to the plans and specifications submitted to and approved by defendant's officers, in pursuance of the stipulations contained in the lease. That the rent was to begin when the building was completed, and when it was so completed the keys were delivered to defendant's president, and the defendant thereafter paid the monthly rent for fifteen months by checks signed with the name of the corporation, which payments were entered in the corporation's books in the regular course of business. That after defendant went into possession of said premises it sublet the premises in its own name by different leases to different tenants, part of them being sublet for the purposes of a saloon, and a part for a workingmen's hotel, and it collected the rents from the subtenants for its benefit. The rents so collected were placed to the credit of the subtenants in the regular course of the corporation's business. That it sold beer manufactured by it to its subtenant who occupied the saloon and the hotel; that when some of its subtenants defaulted in the payment of their rent it brought suit in its corporate name to eject said tenants and to obtain judgment of restitution of the premises against such subtenants. That upon the completion of the building it placed in said hotel and saloon some sixteen hundred dollars' worth of furniture and fixtures. Remensberger, the defendant's president, testified as follows: "I read the lease. I guess Mr. Windeler read it—I don't know for sure—and the terms of the lease were mentioned at the time of the meeting of the board of directors.

"Q. And it was stated at the meeting of the board of directors that this was to be a lease to the Enterprise Brewing Company, wasn't it? A. Yes, sir.

"Q. And thereupon did the board of directors then assembled agree to take that lease? A. Yes, sir.

"Q. Subsequently to that meeting, and pursuant to the wishes of the members of the board then assembled, wherein they stated that they wanted to take that lease, did you and Mr. Windeler sign that lease? A. Yes, sir.

"Q. After the lease in this action had been signed by the Enterprise Brewing Company, by yourself as president and Mr. Windeler as secretary, did the matter of this lease at any time thereafter come up for consideration by the board of

directors of the Enterprise Brewing Co.? A. No. . . . I believe there were two or three meetings of the board of directors to consider the matter of this lease.''

It is not necessary to further discuss the contention as to the insufficiency of the evidence. Honesty and fair dealing require that the defendant be held to the terms of the lease. Under the circumstances as disclosed by this record, it was not necessary to show a formal resolution in writing signed by the board of directors authorizing the lease. It was authorized by the board of directors; it was afterward ratified by them. The president of the corporation virtually so states. No director of the defendant has taken the stand and denied it.

It is next claimed that the defendant had no power to enter into the lease, and that it is *ultra vires.* The doctrine of *ultra vires,* when invoked by a stockholder of a corporation, or in *quo·warranto* proceedings by the state, particularly as to executory contracts and in violation of its charter or entirely outside the scope and purpose of its creation, is looked upon quite differently than it is when relied upon by a corporation as a shield to escape its just liabilities under an executed contract. In such case the rights of the party with whom the corporation has made the contract, and the consequences to him, are to be carefully weighed before the court will hold the contract void. In such cases the courts simply consider the facts as to the circumstances of the contract, as to whether or not the corporation has received benefits under it; as to whether or not the doctrine of estoppel *in pais* may be invoked. In other words, it is the policy of the law and the endeavor of the courts to hold corporations as well as natural persons to their contracts and make them liable for the obligations they have incurred. Such defense introduced against a contract which has been executed wholly or in part by the corporation is looked upon with disfavor, and particularly of late years when corporations have multiplied until they control and operate all kinds of business, and in many cases to the exclusion of individuals. The rule is based upon the strongest principles of justice and public policy, that a contract should be enforced against a corporation when it has received the consideration or the benefits of the contract. As to contracts of corporations that are *malum in se* or

*malum prohibitum,* they will not be enforced; but as to contracts not thus objectionable, justice and public policy, as before stated, require that the doctrine of *ultra vires* should be limited in its scope and application.

Appellant invokes section 360 of the Civil Code, which provides, "No corporation shall acquire or hold any more real property than may be reasonably necessary for the transaction of its business or the construction of its works, except as otherwise specially provided." It is claimed that the words "acquire or hold" apply to a lease of real estate. If this be so, the court found "That said leased property at all times in said complaint mentioned was and now is reasonably necessary for the transaction of the business of said corporation defendant." There is evidence sufficient to support this finding. One of the purposes of the defendant corporation, as set forth in its articles, is "to manufacture and sell beer." One of the objects of defendant in procuring the lease was to sublet the saloon to one of its old customers who had been in the habit of buying beer from them and who would buy beer and sell it at the saloon. It was one of its objects to find a market for its beer and increase its sale. With this purpose in view it purchased the bar fixtures, furnished the bar with such fixtures and furniture. It procured the place where the beer was to be sold, bought the furniture and bar glasses to be used in selling it, leased the property and sublet it to the party who was to sell it. It would not have been in violation of law for the defendant to have purchased a lot and erected a building so as to have a place in which to dispose of its wares. If so, it was not in violation of law for it to lease such place and sublet it to others. Such transaction was germane to the purposes of the corporation defendant and not foreign to it. (*Winterfield* v. *Cream City Brewing Co.,* 96 Wis. 239, [71 N. W. 101]; *National Brewing Co.* v. *Ahlgreen,* 63 Ill. App. 475; *Standard Brewery* v. *Kelly,* 66 Ill. App. 267; *Koehler & Co.* v. *Reinheimer,* 26 App. Div. 1, [49 N. Y. Supp. 755]; *Glass* v. *Heim Brewing Co.,* 47 Mo. App. 639.)

The judgment is affirmed.

Kerrigan, J., and Hall, J., concurred.