[Civ. No. 4207. Second Appellate District, Division Two.—May 29, 1924.]

## S. W. LUITWIELER, Respondent, v. LUITWIELER PUMPING ENGINE COMPANY (a Foreign Corporation), Appellant.

[1] CONTRACTS—ASSIGNMENT OF PATENTS—USE BY CORPORATION FOR LONG PERIOD—ACCEPTANCE OF BENEFITS—CLAIM OF INVALIDITY OF CONTRACT—ESTOPPEL.—Where, under a contract providing that a holder of certain patents, relating to the manufacture of pumps, should for certain considerations grant and convey to a corporation said patents and other inventions, as well as all inventions which he might thereafter devise as improvements thereon, there has been long acquiescence and performance of such contract through use of the inventions, and the manufacture and sale of the products, resulting in the acquisition by said corporation of all profit which there is any probability of obtaining thereunder, said corporation is estopped from escaping liability for obligations due under the consummated contract by claiming that it is invalid.

(1) 14a C. J., p. 313, sec. 2161, p. 589, sec. 2535.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles S. Burnell, Judge. Affirmed.

The facts are stated in the opinion of the court.

Haas & Dunnigan for Appellant.

W. S. Taylor and E. W. Forgy for Respondent.

CRAIG, J.—Prior to the year 1908 a corporation, hereinafter referred to as the California company, was incorporated pursuant to the laws of this state, bearing the same name as appellant, of which respondent was president and a director, and was engaged in the manufacture of pumps and their component parts. Said company then held and utilized the patent rights covering certain inventions of respondent, and a considerable amount of its capital stock was owned by him. In 1908 the corporation taxes were not paid as required by statute, and the charter of the California company

1. See 10 Cal. Jur. 621; 10 R. C. L. 724.

expired. Respondent and others incorporated in the state of New York, by the same name, the appellant corporation, hereinafter called the New York company, in which shares of stock were exchanged equally for outstanding shares of the California company, and the respondent was president and a director of the new corporation. Its directorate, in accordance with its articles of incorporation and by-laws, consisted of five directors, and on November 5, 1909, a directors' meeting was held at Rochester, New York, at which time but four of said directors were present, which said meeting appears from the minutes to have been an adjourned regular monthly meeting.

Three of the directors present at such meeting, one of whom was respondent, voted in favor of adopting and executing a written contract with respondent—a director other than respondent voting in the negative—reciting that whereas the respondent was the inventor of certain valuable improvements in pumps and pumping engines and analogous apparatus, for which there had been issued five specified patents, and was possessed of certain other inventions for which he had applied for letters patent, all of which the New York company was desirous of acquiring; and the respondent had theretofore granted to the California company exclusive right to make, use and vend apparatus embodying his several inventions for which letters patent had been issued or applied, it was therefore agreed that the respondent should grant and convey said five patents and other inventions, as well as all inventions which he might thereafter devise as improvements thereon. It is further recited that in consummation of said agreement respondent therewith delivered to appellant a license to be recorded at the patent office. In consideration of such sales appellant therein agreed to create a demand and a market for said apparatus and to deliver to respondent 193 shares of stock in exchange for a like number of shares in the California company, and one share of common stock for each share of common or preferred stock sold from its treasury, "as payment *pro tanto* for the rights granted hereby to licensee." Respondent further agreed that he would from time to time file applications for patents on such future inventions as appellant might desire to have protected.

Respondent instituted this action for the collection of $7,421.52 alleged to be due him from the appellant cor-

67 Cal. App.—35

poration on account of dividends accumulated on shares and scrip certificates described in his complaint.

Appellant filed an answer and cross-complaint, alleging that on the thirty-first day of July, 1909, respondent was the owner of 549½ shares of said corporation, and that on November 5, 1909, respondent caused the appellant to enter into a contract with him that for each share of capital stock sold and issued to any person, firm or corporation it would issue one share of common stock to respondent; that appellant was then the owner of the patents and rights described in the complaint, and that it entered into said agreement inadvertently and without consideration; that all of respondent's certificates of stock in excess of 549½ shares were thus illegally obtained, and he had been paid $10,500.36 in dividends on all stock held by him; that $1,458.24 was justly due respondent as dividends upon shares legally issued to him, and that he was entitled to a credit of $919.50 in redemption of 66 shares on January 1, 1921. Appellant prayed judgment against respondent for $8,122.42 alleged to have been overpaid him, and for cancellation of all certificates of stock issued to him pursuant to the agreement mentioned.

As a further defense appellant alleged that on the fifth day of November, 1909, and up to the seventh day of February, 1916, respondent dominated and controlled the affairs of said corporation, and its directors and officers, and that on the date of the contract he caused them to execute the same in consideration of the acquisition of patents which the corporation already owned, and in which respondent had no personal interest; that in pursuance of such agreement, and in payment of dividends, to which respondent was not entitled, 859½ shares of common stock were illegally issued to him. Respondent filed an answer to appellant's cross-complaint, which embodied a copy of the contract in question, and denied each of the material allegations, alleging that said agreement was regularly executed, and was entire and complete, for mutual and dependent considerations, and that he had at all times fully performed all the conditions and obligations thereof until prevented from so doing by action of appellant's officers on February 7, 1916.

At the trial appellant stated that in addition to failure of consideration, as alleged in its answer, it would further contend that since only four of the five directors were pres-

ent at the meeting of November 5, 1909, one voting against the adoption of the contract, respondent's vote was required to constitute a majority, but that inasmuch as a contract between respondent and the corporation was involved, his vote was illegal, and that the motion therefore was not effectually carried and the action of the board was void. An order was made that the answer be deemed to have been thus amended, and denied.

The trial court found that all of the allegations of the complaint were true, and rendered judgment against the appellant corporation for $7,984.30.

Respondent testified that the California company never owned any of the patents in controversy, but held merely a license to use them; that upon the termination of said company's existence and the organization of the New York company, a new contract was executed, and operations began at Rochester, New York, where his patents were used in the manufacture of pumps; that thereafter he created a new piston and other apparatus which he proceeded to patent, and that the corporation received them and continued to use them, up to the time of the trial; he said that the company manufactured from eight of his patents many machines and parts, including a driving mechanism for triplex pumps, "and to the best of my knowledge are using it yet." It appears that in 1916 differences arose between respondent and the officers of the corporation, and that respondent then ceased to be president, but the foregoing testimony stands uncontradicted, and there is no evidence anywhere in the record tending to show that the agreement in controversy was ever questioned by anyone until suit was filed. Respondent also testified that he acquired some shares of stock from other persons, and that certificates were sent him through the mails by the company's secretary as late as 1910. He and his transferees voted the shares of stock in question for about seven years, and the corporation has availed itself of the continued use and benefit of respondent's old and new inventions, so far as the record discloses, without interruption from November 5, 1909, during the years that respondent was active in its official management and since he severed connection with its board of directors in 1916.

Appellant's whole defense upon the trial, and its briefs upon this appeal, have been devoted to an attack upon the

validity of the directors' meeting of November 5, 1909, and the contract alleged to have been adopted at that time, but aside from its assistance by way of detail we cannot say that the existence of this writing is vital to respondent's cause of action. The trial court found upon the evidence before it that respondent "pursuant to said contract and at all times thereafter, continued to render and perform all of the services and the consideration in said contract provided"; and that appellant "at all times since has retained and held the same and that the parties thereto have at all times since continuously acted upon the same as a valid and regular contract of said corporation."

In *Standard Oil Co.* v. *Syle,* 164 Cal. 435, 446 [129 Pac. 589], it was said by the supreme court: "Under clear principles of estoppel that corporation may not now assert the invalidity of a corporate act regular upon its face. The courts have almost uniformly sustained contracts which litigants who have profited thereby have later sought to avoid on the ground that such agreements were executed without proper authority. Such has been the ruling in the following cases: *Main* v. *Casserly,* 67 Cal. 127 [7 Pac. 426]; *Gribble* v. *Columbus Brewing Co.,* 100 Cal. 67 [34 Pac. 527]; *Lawrence* v. *Johnson,* 131 Cal. 175 [63 Pac. 176]." And the same rule was applied in *McQuaide* v. *Enterprise Brewing Co.,* 14 Cal. App. 315 [111 Pac. 927], where it was said: "In other words, it is the policy of the law and the endeavor of the courts to hold corporations as well as natural persons to their contracts and make them liable for the obligations they have incurred. . . . The rule is based upon the strongest principles of justice and public policy, that a contract should be enforced against a corporation when it has received the consideration or the benefits of the contract."

[1] It is not contended by appellant that the contract was unfair, or that any defect in the apparatus or the patents ever arose to cause dissatisfaction with its bargain; appellant has retained and benefited by the skill and efforts of respondent, devoted to its interests in consideration of reciprocal covenants to which appellant took no exception for many years and until occasion seemed to demand an excuse for refusal to further compensate him. Long acquiescence and the performance of the contract through use of the inventions, and the manufacture and sale of the prod-

ucts, resulting in the acquisition by appellant of all profit which there is any probability of obtaining thereunder, forbid that the corporation should now escape liability for obligations due under a consummated agreement.

The judgment is affirmed.

Finlayson, P. J., and Works, J., concurred.