## In re SAN FRANCISCO BAY EXPOSITION.
### No. 32086.

District Court, N. D. California, S. D.
May 31, 1943.

Grant H. Wren, Gordon Johnson, and August B. Rothschild, all of San Francisco, Cal., for disbursing agent of debtor.

Robert W. Kenny, Atty. Gen., I. M. Peckham, Deputy Atty. Gen. and Lenore D. Underwood, Deputy Atty. Gen., for Building and Loan Commissioner, respondent.

GOODMAN, District Judge.

On December 14, 1938, Pacific States Savings and Loan Company, a corporation organized under the Building and Loan Association Act of the State of California (Statutes 1931, page 483, Act 986, General Laws, amended 1933, 1935) then owning and operating in San Francisco, the Clift Hotel agreed in writing to pay the debtor the sum of $11,655 in nine equal installments commencing March 1, 1939. The quid pro quo for the subscription consisted of similar promises and agreements on the part of other subscribers, all motivated by a common desire to effectuate the Exposition for civic benefit. In the case of the Pacific States, as well as other hotel owners, increased hotel business was obviously an additional consideration. The subscription of Pacific States was modified, by amendment attached, to provide that the amount to be paid should not in any event exceed 2% of the gross room rentals collected at Clift Hotel during the period from March 1, 1939 to November 2, 1939. Calculated on the foregoing basis, the evidence showed the amount of the liability under the subscription agreement, as amended, to be the sum of $6,519.04. Said sum represented 2% of $325,952 the gross room rentals during the period stated. The Exposition opened for business on February 19, 1939. On March 4, 1939, the Building and Loan Commissioner of the State of California took over the assets and business of the Pacific States (Building and Loan Association Act, Section 13.11). On September 1, 1939 the Building and Loan Commissioner, claiming authority under Section 13.13 of the Building and Loan Act, by notice in writing to the Exposition, disaffirmed the subscription agreement. Nothing was ever paid upon the subscription agreement.

After petition filed herein on October 20, 1939, pursuant to Chapter 11 of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq., G. W. Brainard was appointed Disbursing Agent of the debtor. On February 11, 1941, the Disbursing Agent filed with the Referee a petition for an order citing the Building and Loan Commissioner to show cause why the latter should not be ordered to pay the Disbursing Agent the sum of $6,519.04 owing pursuant to the terms of the subscription agreement. Order to show cause was issued, and, after hearing thereon, the Referee entered an order denying the petition and discharging the same. The certificate and report of the Referee is before me for review upon petition of the Disbursing Agent.

Before the Referee, respondent Building and Loan Commissioner moved to quash the order to show cause and dismiss the Disbursing Agent's petition for lack of jurisdiction, asserting that the

Referee was not empowered to determine the issue on summary proceedings and that the respondent could only be held to answer in a plenary action. The Referee denied the motion and thereupon the respondent filed a verified answer and the Referee heard and determined the issues thus raised upon the merits. Respondent, while supporting before me the decision of the Referee on the merits, re-asserts lack of jurisdiction on the part of the Referee to hear and determine the issue on the merits. The issue of jurisdiction is not properly before me. No petition for a review of the Referee's order denying respondent's motion to quash the order to show cause was filed by respondent within the statutory time or at all and the order of the Referee thereon is therefore final. Section 39, sub. a of the Bankruptcy Act, as amended in 1938, 11 U.S.C.A. § 67, sub. a. Patents Proces, Inc., v. Durst, 9 Cir., 69 F.2d 283; In re Tinkoff, 7 Cir., 85 F.2d 305; City of Long Beach v. Metcalf, 9 Cir., 103 F.2d 483, certiorari denied, 308 U.S. 602, 60 S.Ct. 139, 84 L.Ed. 504.

Even if the question of jurisdiction were properly before me, I would hold, in view of the recent trend of authority, that jurisdiction existed.

In the petition for review, petitioner attacks Referee's findings 11 and 12, wherein the Referee determined that by the subscription agreement, there was an attempted investment of funds of Pacific States, contrary to the Building and Loan Act and that its act was in effect ultra vires.

■ By orthodox appellate rules, the findings of fact of the Referee should be accepted upon review. However, while denominated findings of fact, it is clear to me that the so-called findings 11 and 12 are, in purport and effect, conclusions of law. From the record, it is clear that the subscription agreement was not in the nature of an investment of funds or a gift. Pacific States was engaged in operating a hotel, and performed all of the business functions necessary and proper for the conduct of a hotel. Expenditures for advertising signs and literature proclaiming the virtues of the hotel were unquestionably proper business expenses. By the same token, a commitment to aid in the building and operation of the Exposition thereby filling the rooms of the hotel, is hardly more than an ordinary expense; certainly it was not a gift or investment. That it was well within the power and

authority of Pacific States to incur such an obligation is well established. Richelieu Hotel Co. v. International Military Encampment Co., 140 Ill. 248, 29 N.E. 1044, 33 Am.St.Rep. 234; Temple St. Cable Ry. v. Hellman, 103 Cal. 634, 37 P. 530.

■ I conclude that the Pacific States had no lack of power or capacity to subscribe to the Exposition. An assumption that the execution of the subscription agreement was ultra vires is of no aid to respondent, for Pacific States had received all the benefits which it expected and for which the Exposition obligated itself. Under well-settled rules, respondent was thereby estopped from claiming lack or excess of power or authority to enter into the agreement. McDonald Logging Co. v. Cobb, 9 Cir., 278 F. 165; Main v. Casserly, 67 Cal. 127, 7 P. 426; McQuaide v. Enterprise Brewing Co., 14 Cal.App. 315, 111 P. 927; Kelly v. Ning Yung Benev. Ass'n, 2 Cal.App. 460, 84 P. 321.

■ We come next to this question: What was the effect of the Building and Loan Commissioner's so-called letter of disaffirmance?

Section 13.13 of the Building and Loan Association Act vests in the Building and Loan Commissioner the power to "(4) within six months after obtaining knowledge of the existence thereof, disaffirm any executory contracts (including leases) to which such association is a party, and disaffirm any partially executed contracts (including leases) to the extent that they remain executory."

Thus by the Building and Loan Act there was conferred upon the Commissioner the same power to disaffirm granted to trustees and receivers in bankruptcy. Bankruptcy Act, Sec. 70B, 11 U.S.C.A. § 207.

The Referee assumed that any contract not completely performed by either party is executory in the sense which gives rise to the right of disaffirmance. Upon that assumption he held that the Building and Loan Commissioner could disaffirm the subscription agreement, because even though the Exposition had performed, the Commissioner had not; ergo, the contract was executory and the Commissioner could disaffirm. In a literal sense, executory contracts are, of course, those wherein performance in whole or in part has not been had. Upon that general premise, without further distinction, the Referee bottomed his decision. In the sense used in both

the California statute and the Bankruptcy Act, they (i. e. executory contracts) are the type of contracts which call for performance in futuro, such as leases, contracts for electric power, light, heat, delivery of commodities, services and the like. Both by State and Federal Statutes, there is vested in trustees the power to decide whether the performance of such contracts is beneficial or burdensome. Even disaffirmance of such contracts does not relieve the trustee of liability. Renouncement still leaves open to the injured party a remedy for damages. In re Lathrap, 9 Cir., 61 F.2d 37, at page 42; Atchison, etc., v. Hurley, 8 Cir., 153 F. 503, at page 510.

Where, however, the contract has been fully performed by one party, giving rise to the obligation of payment upon the part of the other, renouncement by the party having the obligation to pay, is equivalent to a breach. If the Pacific States had borrowed $6,519.04 from a bank and executed its promissory note therefor, could it disaffirm, prior to maturity, on the ground that the contract was executory, being still unperformed by it? Granted the power to disaffirm, it amounts to a breach and gives rise to the right to recover damages on the part of the injured party; since the measure of damages for failure to pay money is equal to the amount that should have been paid, the right of disaffirmance is illusory. Prior to disaffirmance, by the Commissioner, Pacific States had received the consideration it expected and the Exposition agreed to give. University of So. Cal. v. Bryson, 103 Cal. App. 39, 283 P. 949; Los Angeles Traction Co. v. Wilshire, 135 Cal. 654, 67 P. 1086; First Trust, etc., Bank v. Coe College, 8 Cal.App.2d 195, 47 P.2d 481.

▆ The effect of the Referee's order is to allow Pacific States to escape payment of a just debt presently owing. Neither the California nor the bankruptcy statutes can be availed of to further such an unworthy purpose. I conclude that this is not the type of executory contract, which is subject to disaffirmance under the statute. Even if disaffirmed, the obligation to pay the debt still persists. In re H. K. Porter Co., D.C., 24 F.Supp. 766.

▆ Also submitted for decision, along with the petition for review is respondent's motion to re-refer the entire proceeding to the Referee. By affidavit in support of this motion, it is made to appear that subsequent to the Referee's decision, an order was published by the Commissioner requiring all claims against the Pacific States to be filed by November 16, 1942; that no claim was filed with the Commissioner by the aforementioned date by the Disbursing Agent of the debtor; that upon re-reference of the proceeding to the Referee, the entire proceeding should therefore be dismissed.

The motion is without merit. The Building and Loan Commissioner, having appeared and litigated the merits of the claim in the Bankruptcy Court and thereby acquiring full knowledge of the nature of the claim, it would be unjust to hold that non-filing of the claim in the office of the Commissioner should work a denial of the claim. In re Brill, 2 Cir., 52 F. 2d 636.

The order of the Referee is reversed and the petition of the Disbursing Agent for an order requiring the Building and Loan Commissioner to pay to the Disbursing Agent the sum of $6,519.04 and for the other relief prayed for in said petition is granted.

The motion of respondent to re-refer the matter of petitioner's claim against respondent to the Referee is denied.