HENRY S. CARPENTER *et al.*

*v.*

THE FIRST NATIONAL BANK OF JOLIET.

*Filed at Ottawa January 25, 1887.*

1. AMENDMENT *of declaration— on opening judgment by confession, to let in defence.* Where a judgment by confession has been opened, and the defendant allowed to plead, the court may properly allow an amendment of the declaration, to avoid a variance, when the note, warrant of attorney and *cognovit* are filed, and they show an error in the date of the note, as alleged in the original declaration.

2. PRACTICE—*opening and conclusion of the argument to the jury.* Whether the plaintiff or defendant shall have the opening and close of a case, is generally deemed a matter of discretion, to be ordered by the judge at the trial, as he may think most conducive to the administration of justice; and an error in this respect is ordinarily not of sufficient gravity to call for a reversal.

3. Where the defendant pleads the general issue, and also special pleas of an affirmative nature, he must withdraw the general issue before he can de-

mand the privilege of opening the case. And if the defendant pleads the general issue, with a stipulation that all special matters of defence may be set up under it, he will not, merely by reason of affirmative matters thus to be allowed in defence, be entitled to open and close.

4. PLEADING—*general issue, with a stipulation to permit special defences—effect in fixing the affirmative of the issues.* Where a defendant files only the general issue, under a stipulation that the same defences which could be properly set up in special pleas may be introduced under the general issue, the same as though specially pleaded, the stipulation will not have the effect of making a special plea out of the general issue, but the cause will stand as though the general issue, and, in addition thereto, affirmative pleas, had been filed.

5. CONTRACT—*executed without reading—whether binding upon maker.* If a party signs a promissory note without reading it or understanding its contents, this will not relieve him of his liability as maker, when no artifice was used to induce him to sign the same, and he is a man of mature age, and able to read and write, and had an opportunity to read and examine the paper before signing it, and to inform himself of its contents.

6. MEASURE OF DAMAGES—*for defect in quality of grain sold.* Where grain sold proves to be not of the quality bargained for, the general rule is, that the purchaser is entitled to recover the difference between the contract price and the value of the article in the market at the time and place of delivery.

7. This rule, however, is changed, when the vendor knows that the purchaser has an existing contract for a re-sale at an advanced price, and that the purchase is made to fulfill such contract, and the vendor agrees to supply the article to enable him to fulfill the same. In such case, the profits which would accrue to the buyer upon fulfilling his contract or re-sale, may justly be said to have entered into the contemplation of the parties in making the contract.

8. INSTRUCTION—*assuming disputed facts—ignoring elements in the case which ought to be considered.* In an action upon a note given for the price of a lot of corn purchased, in which damages were claimed for a defect in the quality of the corn, an instruction which assumes that the defendant had a contract for its re-sale at a particular place, at an advanced price, (which is a disputed fact,) and leaves out of consideration the question whether or not such a contract did exist, or whether the vendor knew of its existence, and that the grain was bought to fulfill it, and whether he agreed to supply the same to enable the purchaser to fulfill it, is erroneous, and properly refused.

9. EVIDENCE—*whether a sale was absolute or upon condition.* Where it becomes a question whether a contract for the sale of corn was an absolute one on the day it was made, or was not to be such until after an inspection in Chicago, to which place it was shipped, and the corn was found to be of a

certain grade, if the purchaser actually treats the corn as his own by making a sale of a part of it before the inspection could possibly have taken place, such conduct is evidence tending to show that the purchase was an unconditional one, and without reference to an inspection.

· 10. SAME — *as to a matter not within the personal knowledge of the witness.* Where a person shipping grain to market, through his agent there sells the same, not being present at the sale and having no personal knowledge of the price it sold for, is asked, when on the stand, what price he received for the same, an objection to the question will properly be sustained, as his testimony would be based entirely upon the report made to him. In such case the testimony of the agent who made the sale should be taken on that question.

· 11. SAME—*relevancy—as to what a party would have done, if he had known a particular fact.* Where the issue being tried is whether the defendant's purchase of grain was conditional upon an inspection of the same in Chicago, and whether the result of such inspection was correctly stated to the defendant, it is immaterial whether he would have made the purchase if he had known of the inspection, and there is no error in disallowing a question seeking to elicit that fact.

12. SAME—*promissory note—as prima facie evidence of amount due.* A promissory note is *prima facie* evidence of the amount due to the payee, so as to throw upon the maker, when sued thereon, the burden of showing a less amount due than that named in the same.

APPEAL from the Appellate Court for the Second District; —heard in that court on appeal from the Circuit Court of Will county; the Hon. GEO. W. STIPP, Judge, presiding.

Messrs. GARNSEY & KNOX, for the appellants:

There was error in refusing appellants the opening and close of the case. *Railroad Co.* v. *Bryan,* 90 Ill. 134; *Mills* v. *Oddy,* 6 C. & P. 728; *Hornan* v. *Thompson,* 25 E. C. L. 654; *Smart* v. *Raynor,* id. 656; 1 Greenleaf on Evidence, sec. 75; *Aurora* v. *Cobb,* 21 Ind. 492.

The judgment should have been arrested. Gould's Pleading, chap. 10, sec. 55, p. 485; Stephen's Pleading, 96; Tidd's Practice, 922.

The first refused instruction announced the correct rule of damages. Benjamin on Sales, sec. 871; *Crabtree* v. *Kile,* 21 Ill. 180; *DeWolf* v. *McGinnis,* 106 id. 554; *Railroad Co.* v.

*Cobb,* 41 id. 141; *Thorne* v. *McVeigh,* 75 id. 84; *Messmore* v. *New York County,* 40 N. Y. 422.

Mr. E. C. HAGAR, Mr. A. O. MARSHALL, and Mr. C. A. HILL, for the appellee:

The party against whom judgment would be given in case no proof was offered on either side, has the burden of proof, and the right to open and close. *Railroad Co.* v. *Ryan,* 90 Ill. 126; *McReynolds* v. *Railway Co.* 106 id. 152; *South Park Commissioners* v. *Trustees,* 107 id. 489; *Williams* v. *Sharp,* 12 Bradw. 454; *Huddle* v. *Martin,* 54 Ill. 258; *Kells* v. *Davis,* 57 id. 261; *Kent* v. *Mason,* 79 id. 540; *Colwell* v. *Brown,* 75 id. 516; *Harvey* v. *Ellithorpe,* 26 id. 418; *Topper* v. *Snow,* 20 id. 434; *Amos* v. *Hughes,* 1 M. & R. 494; Wharton on Evidence, sec. 357; 1 Greenleaf on Evidence, sec. 76.

The judgment was not void. *Roundy* v. *Hunt,* 24 Ill. 598; *Chase* v. *Dana,* 44 id. 262; *Tucker* v. *Gill,* 61 id. 236.

If error appears in the record, the only remedy is by motion to set aside the judgment. *Stein* v. *Good,* 16 Bradw. 516; *Stuhl* v. *Shipp,* 44 Ill. 135; *Rising* v. *Brainard,* 36 id. 80; *Keith* v. *Kellogg,* 97 id. 147.

In this case the error was a mere clerical one in the declaration, and was, under the authorities, released by the *cognovit,* even though the judgment was entered in vacation. *Keith* v. *Kellogg,* 97 Ill. 147.

The rule is well established, that errors which may intervene in judgments by confession are released, when the warrant of attorney and *cognovit* so provide. *Freer* v. *National Bank,* 73 Ill. 473; *Hall* v. *Hamilton,* 74 id. 437.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

In this case a judgment by confession was entered in vacation. The note filed is dated June 19, 1884. The declaration described the note, as dated July 19, 1884. Upon motion of the defendants, the judgment was opened, and defendants

were allowed to plead. The case was tried before a jury, and the defendants introduced proof, in support of the matters of defence, insisted upon by them. After the judgment was opened, the circuit court permitted the plaintiff to amend its declaration by describing the note, as dated on June 19, instead of July 19. Defendants claim, that the judgment was void, because the date of the note was mis-stated in the declaration, and that the trial court had no power to permit the amendment. This position is wholly untenable. When the judgment was opened, and the defendants had pleaded, the case was under the control of the court. There was merely a variance between the date in the note and the date in the declaration. The note, warrant of attorney and *cognovit* were all a part of the files of the court, and showed, that there was a purely clerical error in the declaration, which the court had full power to correct from the papers already in the record. It was, moreover, such an error, as was waived by the agreement, in the warrant of attorney and in the *cognovit*, to release errors. *Hall* v. *Jones,* 32 Ill. 38; *Frear* v. *Commercial Nat. Bank,* 73 id. 473; *Hall* v. *Hamilton,* 74 id. 437.

Appellants, who were the defendants below, insist, that the circuit court erred in not permitting them to have the opening and closing of the case in the conduct of the trial before the jury. It is admitted, that appellee is not the owner of the note sued upon, but merely holds the legal title thereto for F. W. Woodruff and A. L. Jones, the real owners thereof. The note was given in part payment for corn sold to appellants by Woodruff & Jones. The latter claim, that they made an absolute and unconditional sale of the corn to appellants on June 19, 1884. On the other hand, the defence, set up by the appellants, on the trial below, was, that they agreed to purchase the corn, upon condition that five car loads of corn of the same kind, which Woodruff & Jones had shipped from Joliet to Chicago on June 19, 1884, should turn out, upon inspection in that city, to be of the grade, known as No. 2

corn; that, on June 20, 1884, they were induced by statements, made to them by Woodruff & Jones, to believe, that the corn shipped to Chicago, had inspected as No. 2 corn, and, relying upon such statements, had closed the bargain for the purchase of the corn; that, about eleven days thereafter, and after they had shipped the corn to Philadelphia and had been forced to sell it there at a sacrifice, they learned, that the statements, which had been made to them, were false, and that the five car-loads, sent to Chicago, had proven, upon inspection there, to be of a grade, greatly inferior to No. 2 corn.    Appellants claim, that, on the trial, they held the affirmative of the issues involved, inasmuch as the burden rested upon them to show the conditional character of the sale, and the failure of Woodruff & Jones to comply with the conditions, and that, therefore, they were entitled to have the opening and close of the case.

Whether the plaintiff or the defendant shall have the opening and close of the case, "is generally deemed a matter of discretion, to be ordered by the judge at the trial, as he may think most conducive to the administration of justice." (1 Greenleaf on Evidence, sec. 76.) In *Huddle* v. *Martin*, 54 Ill. 258, where the defendant, having admitted plaintiff's account and set up payment, held the affirmative, and, so, was entitled to open and conclude his case, but was not allowed to do so, it was held, that such an error "would not be sufficient to reverse a judgment just in itself, when a fair trial had been had upon the merits and on proper instructions." Upon the same subject, it was said, in *Kells* v. *Davis*, 57 Ill. 261: "So slight an error in practice ought not to be a ground for the reversal of a judicial proceeding in all other respects regular, and that does justice between the parties."

Even if appellants were erroneously denied the privilege of opening and closing the case, we are unable to say, that any such injustice has been done them, as to justify us in reversing this judgment on that account.    It appears, that

the verdict is more than $1500 less than the amount claimed by the plaintiff to be due on the note. The judgment of the Appellate Court upon the facts is final, and we are bound to assume, that that court found the verdict to be sustained by the facts.

It is to be further noted, that, when the judgment was opened, the appellants filed a plea of the general issue, and it was stipulated, that the same defences, which could be properly set up in special pleas, might be introduced under the general issue the same as though specially pleaded. The stipulation did not have the effect of making a special plea out of the general issue. The cause stood in the same condition, as though the general issue, and, in addition thereto, affirmative pleas, had been pleaded. Where the general issue is pleaded, the affirmative rests upon the plaintiff, and he has the opening and closing. Where the defendant pleads both the general issue, and special pleas of an affirmative nature, he must withdraw the general issue before he can demand the privilege of opening and closing the case. (*Harvey* v. *Ellithorpe*, 26 Ill. 418; *Chicago, Burlington and Quincy Railroad Co.* v. *Bryan*, 90 id. 126.) In the case at bar, the plea of the general issue was not withdrawn.

Appellants claim, that the first, third, eighth and ninth instructions, given for the plaintiff were erroneous, and calculated to mislead the jury. It is said, that, by the first and eighth instructions, the attention of the jury was directed to the execution of the note sued upon, as though that was the only question to be considered by them, and as though no defence to the note was allowable, if it should be found to have been made by the appellants. We do not think, that this view is correct. The two instructions, when taken together, very correctly announce, that the note was *prima facie* evidence of the amount due to the plaintiff, so as to throw upon the defendants the burden of showing a less amount to be due than that named in the note.

The defendants below introduced evidence, tending to show, that they signed the note in a hurry, without reading it, and without really understanding its contents. In view of this testimony, the third instruction very properly told the jury, in substance, that such hurried execution of the note would not relieve the defendants of their liability, as its makers, if no artifice was used to induce them to sign it, and if they, being men of mature years and sound mind, and able to read and write, had an opportunity to read and examine the note, before signing it, and to inform themselves of its contents.

As has already been stated, one of the questions in dispute between the parties was, whether the sale of the corn was made on June 19, or was consummated on June 20, after the inspection in Chicago was alleged to have taken place. The ninth instruction was, in substance, that, if the jury should believe, from the evidence, that, on June 19, appellants sold a part of the corn, purchased by them from Woodruff & Jones, and ordered certain other portions of it to be placed upon the floor of the elevator, in which it was stored, "or exercised any other act or acts of ownership over the said corn" on June 19, the jury would have a right to consider such acts, if proved, in connection with all other evidence, if any, in the case bearing on the question, in determining the date of the sale, and whether it was absolute or on condition. We see no objection to this instruction. If appellants actually treated the corn, as their own property, before the inspection, which was to determine whether it was No. 2 corn or not, could have possibly taken place, such conduct might have a tendency to show, that they had bought it unconditionally without any reference to such inspection.

It is further objected, that the circuit court erred in refusing to give what is called defendants' first refused instruction, which has reference to the measure of damages. Many instructions were given for the defendants, which presented their side of the case in a favorable light. The jury were

told over and over again, that, if they should find the matters of defence, relied upon by the defendants, to be established by the evidence, the defendants "would have a right to set-off, in this action, *any* damages, which resulted to them thereby." The first refused instruction, however, sought to lay down a rule, not referred to in the other instructions, for the guidance of the jury in computing the damages. That rule was expressed in the following language: "The difference between what the grain of the best quality was contracted to be sold for, and what it actually sold for, in the market for which it was purchased."

All the parties, interested in this suit, live and do business in Joliet. The sale was made in Joliet, and the corn sold was in Joliet at the time of the sale, and was there delivered. The evidence tends to show, that appellants were in the habit of buying corn to be shipped to Philadelphia, and that they purchased the corn in controversy for the purpose of shipping it to Philadelphia. The general rule is, that the purchaser is entitled to recover the difference between the contract price and the value of the article in the market at the time and place of delivery. (*Messmore* v. *Lead Co.* 40 N. Y. 427.) "This rule, however, is changed, where the vendor knows, that the purchaser has an existing contract for a re-sale at an advanced price, and that the purchase is made to fulfill such contract, and the vendor agrees to supply the article to enable him to fulfill the same, because those profits, which would accrue to the purchaser upon fulfilling the contract of re-sale, may justly be said to have entered into the contemplation of the parties in making the contract." (*Idem.*)

The refused instruction, considered with reference to the testimony, to which it was intended to apply, told the jury, that appellants were entitled to recover the difference between what they had contracted to re-sell the corn for in Philadelphia, and what it did actually sell for in Philadelphia. We think, that it is erroneous, and was properly refused. It

assumes, that appellants had a contract for the re-sale of the grain in Philadelphia at an advanced price. This was a matter in dispute and to be determined by the jury from the evidence. It, furthermore, leaves out of consideration the question, whether or not, if such a contract did exist, Woodruff & Jones knew of its existence, and that the corn was bought to fulfill it, and whether or not they agreed to supply the corn to enable appellants to fulfill it. If appellants were buying the grain for the special purpose of fulfilling a contract of re-sale in Philadelphia, that fact should have been communicated to Woodruff & Jones, before it could be made the foundation of special damages against them. (*Illinois Central Railroad Co.* v. *Cobb et al.* 64 Ill. 128; *Thorne* v. *McVeagh*, 75 *id.* 81.) Whether it was communicated or not was a matter in dispute between the parties, and the instruction was faulty in not submitting it to the jury.

Under the theory of the appellants as to the proper mode of computing the damages, it was, of course, necessary to show what the grain was actually sold for in Philadelphia. To that end, one of the appellants, when on the stand as a witness, was asked what he received from Philadelphia for the corn, so sold there. The court sustained an objection to the question, and its ruling, in that regard, is assigned for error. The ruling was proper. Neither of the appellants sold the corn, nor knew, of his own knowledge, how much it sold for. The testimony of the parties in Philadelphia, who made the sale there, should have been taken to show its amount. The amount received by appellants may have been less than the amount realized from the sale. The testimony called for by the question, would have been based altogether upon the report, made to appellants by the parties selling, as to what they realized.

It is, also, urged, that the court erred in sustaining an objection to the following question, which was addressed to H. S. Carpenter: "If, at the time you purchased this corn

of Woodruff & Jones, you had known of the inspection of the five cars in Chicago, would you have made the purchase?" The question was clearly improper. It was immaterial what either of the appellants would have done in a certain contingency. The question was, whether the purchase was conditioned upon the inspection of the five cars, and whether the result of such inspection was correctly stated to appellants.

We do not deem it necessary to discuss any other of the numerous points, so elaborately discussed by counsel. After a careful examination of the whole of this lengthy record, we find no errors, which would justify a reversal. The judgment of the Appellate Court is, therefore, affirmed.

*Judgment affirmed.*