### National Candy Company, Appellant, v. Nichols Candy Company, Appellee.

DAMAGES—*when loss of profits cannot be recovered.* The loss of profits upon goods not delivered by the vendor which were purchased for resale, where it does not appear that a contract for such resale at a certain profit was entered into, does not constitute a proper element of damage.

Assumpsit. Appeal from the Circuit Court of Macon county; the Hon. WILLIAM C. JOHNS, Judge, presiding. Heard in this court at the May term, 1909. Reversed and remanded. Opinion filed March 30, 1910.

FRANK F. REED and CHARLES A. WILLIAMS, for appellant; D. C. CORLEY, of counsel.

BUCKINGHAM & GRAY, for appellee.

MR. PRESIDING JUSTICE BAUME delivered the opinion of the court.

This is a suit in assumpsit brought by the National Candy Company, a corporation, having its principal office at St. Louis, Missouri, against the Nichols Candy Company, a corporation doing business at Decatur,

Illinois, to recover a balance of $719.12 alleged to be due for merchandise sold and delivered. The defendant pleaded a set-off amounting to $1,069.20, because of the failure of the plaintiff to ship to the defendant 895 pails of candy, each pail containing about 24 pounds, the same being part and parcel of a certain order given by the defendant to the plaintiff for 1,000 pails of candy at 15 cents per pound, by reason of which failure the defendant claimed to have lost 4½ cents per pound. Upon a trial of the cause by a jury there was a verdict and judgment in favor of the defendant upon its plea of set-off against plaintiff, for $140.08, to reverse which judgment the plaintiff prosecutes this appeal.

The plaintiff operated several candy factories and the indebtedness sued for accrued by reason of the purchase by the defendant from the plaintiff of candy from several of said factories. The defendant does not deny its indebtedness to the plaintiff upon the account as stated. On July 18, 1907, one L. R. Dougherty, a traveling salesman for the factory of the plaintiff located at Indianapolis, Indiana, procured from the defendant an order, as follows:

"Date—7-18-07

National Candy Company

Ship to Nichols Candy Company,

At Decatur, Illinois,

How ship, C H & D

When, To be ordered out by Dec. 15, 1907.

1,000 pail Chocolate cream peanut—15c.

With privilege of 500 more pails at same price."

This order was accepted by the plaintiff and by subsequent correspondence the dates of shipment, and the number of pails to be shipped on such dates, was agreed upon, as follows: 150 pails on September 15, and a like number of pails on September 30, October 15, October 30, November 15, November 30, and 100 pails on December 10, 1907. On some day in Septem-

ber, 1907, prior to September 12, the defendant wrote the plaintiff requesting an immediate shipment of the first lot of 150 pails, and on September 12, following, the plaintiff wrote to the defendant stating that a shipment of 50 pails could be made at once, and also made inquiry with reference to the manner in which the pails should be labeled. The plaintiff then made shipments to the defendant as follows: 50 pails about September 16, 20 pails on October 12, 15 pails the latter part of October and 20 pails about November 23, which were all the shipments made upon the order heretofore mentioned.

The terms of payment under the order as made and accepted were not indicated therein, and the defendant was permitted over the objection of the plaintiff to introduce evidence of an alleged custom or usage which had theretofore existed between the plaintiff and other concerns from which it had purchased candy, whereby sales were made upon a credit of 30 days, with an allowance of 2 per cent for cash within ten days. The evidence was insufficient to establish such a general custom and usage with reference to the particular trade or business involved, as to authorize the jury in finding that the order in question was made and accepted with reference thereto so as to make such custom or usage a part of the contract. Any further discussion of this question in its application to the case at bar is rendered unnecessary by the fact that it was admitted by one of the principal officers of the plaintiff company that the order for the candy was accepted upon the terms claimed by the defendant, and that the shipments which were made upon such order were billed upon such terms. The error, therefore, in admitting evidence of the existence of a custom and usage as offered by the defendant, was harmless.

There is evidence offered on behalf of the plaintiff which tends to show that the manager of the factory at Indianapolis, by reason of an alleged rumor coming

to him prior to the making of the first shipment, to the effect that defendant's solvency was questionable, notified plaintiff's credit man that defendant's credit should be limited to $150, and that shipments of only 10 or 15 pails should be made at a time, in an endeavor to hold defendant's account down. The evidence falls far short of establishing defendant's insolvency, but it clearly appears that during the period following the times when shipments of candy were to be made by the plaintiff to the defendant, the defendant was hard pressed to raise money with which to meet its obligations, and that it sought extensions of time upon its indebtedness to the plaintiff. The situation in this regard was similar to that which confronted business enterprises generally in the Fall of 1907. There is no evidence tending to show that the plaintiff communicated its apprehensions relative to defendant's solvency to the defendant, other than what may be implied from the evidence of Frank Burrous, who testified that upon the occasion in October, 1907, when he went to the Indianapolis factory as the buyer for the defendant, he asked plaintiff's manager why defendant's order for candy had not been shipped, and was told that defendant had been limited to a credit of $250.

The case was tried by the defendant in the court below upon the theory that it was entitled to recover as its damages the difference between the contract price of the candy which plaintiff had failed or refused to ship to the defendant, and the market price of such candy upon its resale by the defendant, less the expense of selling the same, which expense was estimated to be from ½ to ¾ of a cent per pound. There is no substantive proof in the record that the defendant had contracted for a resale of the candy at from 20 to 22 cents per pound, which was claimed as being its market value upon a resale, nor is there in the record evidence of facts and circumstances which warrant a finding that the defendant could have sold such candy if it had

had the same in stock. The mere statement by some of the witnesses called on behalf of the defendant, that the defendant could have resold all of the candy if the same had been shipped as ordered, is clearly based upon pure conjecture and there is evidence in the record which refutes the claim of the defendant in that respect. Under date of February 22, 1908, defendant wrote to the plaintiff, in part, as follows: "You know the money conditions confronting the jobber as well as we do and we will not revert to that, but when we say to you that the falling off of trade the last two months of the year left us with from ten to $15,000 of candy on hand, bought for the holiday trade, and all due and past due on January 1, you can appreciate our position." Neither is there any substantive proof in the record that the defendant made any effort whatever to procure like candy in the open market, nor that it made any attempt, through communication with other manufacturers of candy, with a view of having like candy manufactured for its pretended trade. The testimony of some witnesses called on behalf of defendant to the effect that like candy could not be procured was their mere conclusion, and did not meet the requirements that the defendant should have exercised reasonable diligence to procure like candy for its trade.

The plaintiff must be held to have known that the defendant ordered the candy in question for the purpose of reselling the same at a profit, but this fact alone is not sufficient to authorize a recovery against the plaintiff for the amount of such anticipated profits. The loss of profits upon goods purchased for resale where it does not appear that a contract for such resale at a certain profit was entered into, does not constitute a proper element of damages and such damages are not allowable. Hill v. Parsons, 110 Ill. 107; Armeny v. Madson & Buck Co., 111 Ill. App. 621; Van Arsdale v. Rundel, 82 Ill. 63; Hagen v. Rawle, 143 Ill. App. 543. Other cases go to the extent of holding that

loss of profits may not be recovered as damages unless the vendee before the purchase of the goods had a contract for their resale at a certain profit, which contract for such resale was known to the vendor. Carpenter v. First Nat. Bank, 119 Ill. 352; Lapp v. Illinois Watch Co., 104 Ill. App. 255.

It follows that the trial court erred in admitting evidence of the market value of the candy in question upon a resale of the same by the defendant, in the absence of proof that the defendant had in fact contracted for the resale of such candy.

Plaintiff assigns error upon the action of the court in giving and refusing certain instructions, but what we have heretofore said precludes the necessity of considering the errors so assigned.

The judgment of the circuit court is reversed and the cause remanded.

*Reversed and remanded.*