## John F. Schleuter, Appellee, v. Sherman Brothers & Com= pany, Appellant.

## Consolidated with Sherman Brothers & Company, Appel= lant, v. John F. Schleuter, Appellee.

## Gen. No. 16,023.

1. CONSOLIDATION OF CAUSES—*effect of stipulation.* *Held,* that the stipulation in this case consolidated the causes not merely for hearing, but likewise for disposition, and that the parties were not entitled to separate verdicts and judgments.

2. INSTRUCTIONS—*when refusal to withdraw counts because of variances will not reverse.* If any of the counts of a declaration are good in themselves and are unsupported by proof while others equally good are so supported it is only at least when the instructions assert a right to recover upon the unsupported counts, by reference to or recapitulation of their averments, that their going to the jury with the others may be ground for reversal.

3. INSTRUCTIONS—*when inconsistency ground for reversal.* In a close and doubtful case a lack of harmony in the instructions upon the question of damages is ground for reversal.

4. DAMAGES—*when rulings with respect to should be accurate.* If a case is close on the question of damages the rulings both on the instructions offered on the question of damages and of the items which might be included in them and on the evidence which might be offered thereon, should be accurate.

5. DAMAGES—*what vendor cannot recover.* If a vendee by reasonable diligence could have discovered the defect in property designed for a particular use before using it he cannot hold the vendor for the damages which could have been avoided by his exercise of such reasonable diligence.

6. MEASURE OF DAMAGES—*in an action for breach where sale was made by sample with warranty of bulk.* The ordinary rule for measuring damages for a default in such a sale is merely to determine the

difference between the property as delivered and the value which it would have had had the warranty been true. If however special damages are claimed because the property·was used for a particular purpose it must be shown that the vendor at the time of making the sale knew that such property was designed for such special use.

7. EVIDENCE—*when restriction of cross-examination erroneous.* In an action to recover unusual damages for delivery of an inferior quality of coffee, it is error to restrict the cross-examination of the plaintiff so as to preclude the defendant from showing that the damages claimed or some part thereof did not proximately result from the breach of contract alleged.

Assumpsit. Appeal from the Circuit Court of Cook county; the HON. THOMAS G. WINDES, Judge, presiding. Heard in this court at the October term, 1909. Reversed and remanded. Opinion filed April 1, 1912.

WHEELOCK, SHATTUCK & NEWEY, for appellant.

PHELPS & PHELPS, for appellee.

MR. PRESIDING JUSTICE BROWN delivered the opinion of the court.

In this appeal the appellant, Sherman Bros. & Co., a corporation, seeks to reverse a judgment of the Circuit Court of Cook County rendered against it March 16, 1909, in favor of John F. Schleuter, the appellee, for $1,209.

John F. Schleuter sued Sherman Bros. & Company October 31, 1905, in assumpsit, alleging in a declaration of several counts the breach of a promise alleged to have been made by the defendant corporation, that certain coffee sold by them to him should be of a certain grade. The declaration alleged in various forms that the coffee actually sold and delivered was not according to this promise, but was "poor, inferior and unsalable," "unmerchantable and unmarketable," and that in consequence great damage resulted to the plaintiff in the loss of the profit on resales in which the coffee was not accepted; in the expense of transportation of the coffee to fill such resales and its return; in

liability incurred for breach of contract in such re-
sales; and in the loss of contracts and the future busi-
ness of the people to whom he had made such resales.
In all it alleged knowledge of the defendant of the use
to which the coffee purchased from it was to be put
by the plaintiff, in making resales of it to his custom-
ers, and in most alleged that in connection with said
resales the coffee purchased was to be blended with
other coffee, and that of this the defendant had notice;
that the inferior quality of the coffee purchased made
the blended coffee unsalable and caused its rejection
by the purchasers from the plaintiff, to the enhance-
ment of the plaintiff's damages.

The defendant corporation pleaded the general issue.
Afterward the plaintiff filed two additional counts to
his declaration, to which the general issue already filed
was allowed to stand. The additional counts restated
in composition the complaints of the counts already
described, and made additional allegations as to a val-
uable trade which had been secured by the plaintiff for
his blended coffee, of which the defendant had notice,
and which was ruined by the blending of the inferior
coffee complained of, which, the plaintiff says, "the de-
fendant fraudulently sent and delivered to the plain-
tiff's place of business in the night time, for the pur-
pose of preventing by its examination the detection of
the inferior quality thereof." The damages resulting
are stated to be, that "plaintiff has lost said coffee
and all the coffee blended therewith and the advantage
and profits from the sale thereof, and has been com-
pelled to pay out a large sum of money," etc.

December 15, 1905, Sherman Bros. & Company began
suit against John F. Schleuter, filing on the 8th of
February, 1906, a declaration consisting of the common
money counts and attaching as "the account sued on"
a statement of a running account beginning February
14, 1905, and closing on October 5, 1905. This account
showed a variety of charges for merchandise deliv-

ered by Sherman Bros. & Co. to Schleuter, amounting in the aggregate to $4,158.30, and credits, substantially all of cash payments, amounting to $2,217.69. The balance of $1,940.61 was further reduced, however, by a credit for merchandise returned of $375.61. The resulting balance of $1,565 was the amount which Sherman Bros. & Co. claimed from Schleuter in the suit brought by them. In this suit a plea of the general issue was filed by Schleuter and a notice filed that there would be given in evidence under it proof of certain matters recited, substantially as in the counts of the declaration last filed in the cause of Schleuter v. Sherman Bros. & Co., before mentioned. It alleged that because of said matters the plaintiff was indebted to the defendant in the sum of $7,806.47, out of which said sum of money the defendant offered to set off to the plaintiff the full amount of its damages.

The two causes of Schleuter & Co. v. Sherman Brothers & Co., and Sherman Brothers & Co. v. Schleuter were called for trial together February 24, 1909, and the parties entered into the following stipulation in open court:

"Sherman Brothers & Company sold Schleuter certain coffee and sues to recover the price thereof in No. 268059, and Schleuter claims the coffee delivered was not according to contract and sues in 266817 to recover damages claimed to have been suffered thereby. It is the desire to try and settle all matters in these controversies in one trial, and therefore

It is stipulated in the above entitled causes by the parties by their attorneys, that said above entitled causes shall be consolidated and tried together under the first entitled cause on Judge Windes' Calendar.

It is stipulated that the amount sued upon in this cause and attached to the declaration of Sherman Brothers in the second entitled cause is correct as to amounts shipped and prices at which purchased, but that the amount of credits for coffee returned shall be subject to proof.

It is stipulated further that all matters provable under the pleadings before the consolidation of said causes shall be provable under said pleadings without amendment on the trial of said causes as consolidated.''

The evidence on the part of John F. Schleuter & Company was first presented to the jury, and at its conclusion counsel for Sherman Brothers & Company moved the Court to exclude all the evidence from the jury and to instruct the jury to find the issues for Sherman Brothers & Company, and assess the damages at the sum of $1,565. These motions were denied and evidence was then offered by Sherman Brothers & Company to maintain the issues on its part. After that evidence had been received, counsel for Sherman Brothers & Company moved to exclude the testimony of John F. Schleuter on the ground of variance, which motion was overruled. He then moved to strike out all the evidence and desired the motion to appear as a separate one to each item of the claimed damages, urging that neither damages for loss of profits, for commissions on sales, for time spent in trying to recover trade, for personal transportation expenses, for hotel bills, for expenses in packing coffee and handling coffee nor for freights were ''within the contemplation of the parties, or proximate damages,'' or proper damages to be recovered.

The Court overruled this motion and counsel for Sherman Brothers & Company then asked three peremptory instructions—one that the jury should, as to the claim of Schleuter against Sherman Brothers & Company for damages on account of the quality of the coffee in question, find the issues for Sherman Brothers & Company; another, that the jury should, as to the claim of Sherman Brothers & Company v. Schleuter, find the issues for Sherman Brothers & Company and assess the damages at $1,565; and a third which combined the other two instructions. These instruc-

tions were refused and the Court gave the case to the jury under twelve instructions asked by Schleuter and thirteen asked by Sherman Brothers & Company. As it will be necessary, in our view, to compare some of these instructions, we may here note, for convenience of reference, that those given at the instance of Schleuter were numbered 4-5-6-7-8-9-10-11-14-16-17-19, and those given at the instance of Sherman Brothers & Company were numbered 34-35-36-37-38-42-44-47-48-50-51-52 and 53. Tendered instructions with the intervening omitted numbers were refused, among them separate instructions asked by Sherman Brothers & Company as to each of the counts in Schleuter's declaration, to the effect that there was no evidence to sustain the same.

Instruction No. 14 was as follows:

"In this case Schleuter & Company admit the claim of Sherman Brothers & Company of $1,565 for coffee purchased, and assume the burden of proving by a preponderance of the evidence that a verdict against Sherman Brothers & Company should be rendered in favor of said Schleuter & Co. before the same can be done. The Court further instructs the jury that if from a preponderance of the evidence they believe that Sherman Brothers & Company violated a contract for the sale of coffee made with Schleuter & Co. and shipped Schleuter & Co. inferior coffee in place of that sold, and that such violation of contract caused Schleuter & Co. greater damages flowing proximately and naturally from such violation than the amount of the bill of $1,565 owed Sherman Brothers & Company, then said Schleuter & Company is entitled to recover the difference between the amount of said damage and said $1,565, and the jury will so find by their verdict."

The jury first returned the following verdict: "We, the jury find the issues for John F. Schleuter and Co. and assess his damages at the sum of Twelve Hundred and Nine Dollars."

"Thereupon" (as the bill of exceptions states) "the Foreman of the jury stated to the Court that they wished this amount added to the other amount, whereupon the Court said: 'Do you not understand that this amount of $1,565 is admitted to be due to Sherman Brothers & Company?' The foreman replied, 'We understood we were to omit that amount.' Thereupon the Court said: 'I call your attention particularly to instruction 14 and you may retire again and consider your verdict.' Thereupon the jury returned two verdicts, one in favor of Sherman Brothers & Company in the sum of $1,565, and the other in favor of John F. Schleuter in the sum of Twenty-seven Hundred and Seventy-four Dollars."

Counsel for Sherman Brothers & Company moved to set aside the verdict in favor of Schleuter and for a new trial. This motion was denied. They then moved for judgment on the verdict in favor of Sherman Brothers and Company. This motion was also denied.

"Thereupon," as the bill of exceptions recites, "the Court said he would enter judgment against Sherman Brothers & Company for the difference in amount between the two verdicts." Sherman Bros. & Co. by its counsel moved in arrest of judgment. The motion was overruled and the Court thereupon entered judgment against Sherman Brothers & Company in favor of Schleuter for the sum of $1,209, the difference between the amounts of the two verdicts. To each step in the action of the Court Sherman Brothers & Company excepted. Several of the thirty-two assignments of error made by Sherman Brothers & Company on this appeal attack the action of the Court in thus entering judgment for the difference between the two verdicts. The claim is made that the parties were entitled "to separate verdicts and separate judgments." "The claim of Sherman Brothers & Company for $1,565 was undisputed," counsel say, "and judgment should have been entered therefor without compelling it to await the out-

come of litigation over a claim that was very much disputed.''

We do not think there is any substantial merit in this contention. By the stipulation the cases were consolidated we think, not merely for hearing, but for disposition. The manner of returning the verdicts was simply of form—the intention of the jury being plain.

The matter before us therefore is practically the verdict of the jury in favor of Schleuter for $2,774. Have Sherman Brothers & Company established in this appeal a right to have this verdict, which forms the basis of the judgment rendered below, set aside?

We have given very careful attention to all the respective contentions made and vigorously supported by counsel for appellant and appellee. We cannot discuss them all, nor is it necessary. We do not deem the alleged variance between the allegations of various counts and the evidence in the cause, which it is insisted rendered erroneous the refusal to give instructions withdrawing from the consideration of the jury those counts, sufficient ground on which to base a decision to that effect. Nor even if we thought that the variance existed should we deem it reversible error to have refused these instructions, however allowable it may have been to have given them. Klofski v. Railroad Supply Co., 235 Ill. 146.

If any of the counts good in themselves are unsupported by proof, while others equally good are so supported, it is only at least when the instructions assert a right to recover upon the unsupported counts, by reference to or recapitulation of their averments, that their going to the jury with the others may be ground for reversal.

We think that in this cause there was a good cause of action set out in the declaration of appellee, and that there was evidence tending to support them. Stripped of all refinements and technicalities of pleading and of fine distinctions concerning warranties, express and

implied, and sales by sample and description, the matter stands thus: The appellee maintains and the appellant denies that the appellee contracted for one kind of coffee and was led to believe it would be delivered to him, and that as a matter of fact a different and inferior coffee, for which he had not contracted, was delivered to him.

As we have said, we think this was a good cause of action as stated, that there was evidence proper and sufficient to go to the jury to sustain it, and that therefore the verdict of the jury, so far as it asserts a liability for the fault of the appellant, does not call for our interference.

A further question then presents itself, however, respecting the measure and amount of damages. On this matter we are not satisfied of the justice of the verdict or judgment nor of the accuracy of some of the rulings on evidence and instructions from which they seem to have resulted.

The case was certainly a close one on the question of damages, the evidence to sustain them was somewhat vague and general in its character, and in certain particulars extraordinary, and it was of great importance, it seems to us, that the rulings both on the instructions offered on the question of damages and of the items which might be included in them, and on the evidence which might be offered thereon, should be accurate.

In the matter of the admission of evidence, we think that the trial judge erred in refusing to allow the cross-examination of Alfred Schleuter on the matter of the conduct of the business which his father, the appellee, had been carrying on between the time the appellee (as the witness had testified) had "gone out of it," "several months after this deal," (which was in May, 1905) and the Spring of 1908. The appellee himself had testified that he lost all his customers in Iowa—approximately a thousand—because of receiving and sending

out in his blend this one consignment of unsatisfactory coffee.

In order, apparently, to confirm this, Alfred Schleuter, the son, was asked in his direct examination, "Do you know whether the trade with different customers that your father had went on or ended after the fall of 1905?" He answered that it ended, that "the customers quit," and that the appellee never regained any of the trade. On cross-examination he said that his *father's* trade (distinctly so limiting the statement) ended after the customers "received the bad coffee" in June, 1905.

This colloquy then took place between counsel for appellant and the witness:

"Q. You never did any trading in Iowa after the middle of June, 1905? A. Which, I or father?

Q. Your father? A. Why, no.

Q. Are you selling any in Iowa now? A. How?

Q. Is your father selling any there now? A. My father is not in business.

Q. When did he go out of business? A. Why, he went out of business several months later after this deal.

Q. Who is running the business now? A. I am.

Q. When was the business turned over to you? A. Why, I took hold of it this last spring."

The question was then asked and excluded on objection, "Who ran it from the time your father went out of business up to the time you took hold of it?" although counsel said that he wished to show the circumstances and "to bring out the fact 'that whether this coffee was good or bad had nothing to do with their business ending.'" The Court ruled out the question on the ground it was "going into some other person's business." After this exclusion, however, counsel for appellee asked the witness, "Didn't your father turn over to you any Iowa business?" to which question there was no answer. Then followed these questions and answers:

"Q.   Didn't your father have any customers in Iowa when you took hold of the business?   A. Not that I know of.

Q.   Will you say he did or not?   A. I can't say."

On redirect examination, being asked the question, "Did your father ever get back, while carrying on the business, any of the customers whose trade you say ended when this bad coffee was shipped out?" the witness answered, "Not that I know of."

It seems to us that under the circumstances of this case, when the appellee had been allowed, in the evident design of swelling the damages, to testify that his entire trade in Iowa was lost (although he also testified that some of his customers in that State did not get any of the bad coffee), the appellant was entitled to enter fully into the matter with appellee's successor in the business and into the history and circumstances of its changes and the extinction of the Iowa trade, if it was so extinguished.   We think the denial of the right of full cross examination, above shown, was injurious and reversible error under the circumstances.

The appellee, impliedly at least, claims in argument that nothing was allowed by the jury for the ruin and loss of his Iowa business, and that the evidence in respect to the amount of it in 1904 and the loss of it in 1905 had no effect on the jury, as was shown by the amount of the verdict.

We do not deem this position sound.   The evidence concerning both the amount and loss of this business was offered to all appearance as a basis for computing damages and was admitted over objection, and there is no method of computing the exact sum for damages arrived at by the jury which can reasonably be said to carry a moral certainty therewith that they took no account of the striking testimony of appellee as to the total disappearance of this Iowa trade.

If appellee is prepared to concede—contrary to his position in the trial Court and against implication of

parts of his argument here—that the destruction of the Iowa business was not in any manner a proper element of damage to be considered, the concession seems to us to carry with it the further admission that allowing evidence of it over objection was erroneous. If erroneous it was sufficiently injurious, in our opinion, to require reversal. If the admission of this evidence was not erroneous, then the refusal to allow the full development of the cross examination was not only erroneous but, as we have said, material.

But of still greater importance in leading us to our decision to reverse this judgment and remand the cause for another trial, is what we think is the misleading and inharmonious character of the instructions, taken together, concerning the measure of damages, and the omission in some of them of material factors to make them accurate, an omission somewhat accented by the refusal of others tendered, to which we see no objection.

We think that upon the appellee's own theory this case was a sale by sample with a warranty of the bulk. The ordinary rule for measuring damages for a default in such a sale is merely to determine the difference between the value of the property as delivered and the value which it would have had had the warranty been true. Woodworth v. Woodburn et al., 20 Ill. 184; Moore Furniture Co. v. Sloane, 166 Ill. 457; 2 Sutherland on Damages, 422.

But as Sutherland farther on (page 423) says, this rule is intended for ordinary cases and is not to be applied arbitrarily, excluding, under all circumstances, the recovery of other items of loss occasioned to the purchaser by the default of the vendor. That, under some circumstances, such other losses may be recovered, based on the principle that full compensation for the damage caused by the fault of the vendor should be made by him to the purchaser, is settled. But such damages, as is well expressed in the Article on Damages in the Cyclopedia of Law and Procedure, "are

not always recoverable, but will only be awarded when, in view of special circumstances, they may be regarded as the natural and direct result of the breach and are not problematical, but are capable of being foreseen and of being estimated with reasonable accuracy. In all cases the damages claimed should be capable of being definitely ascertained. Where the damages claimed are so speculative and dependent upon numerous and changing contingencies that their amount is not susceptible of actual proof with any reasonable degree of certainty, no recovery can be had.''

It is not free from doubt whether the testimony admitted in the case at bar gave opportunity for definite ascertainment or a reasonable degree of certainty regarding damages properly recoverable by the appellee.

The least that can be said on that point is that the question was an exceedingly close one. But apart from this consideration there are other rules of great importance governing the recovery of such damages as are not covered by the primary and usual measure before given. In this case they should have been explicitly laid down by the instructions. Thus in order to entitle a plaintiff injured by a breach of warranty to recover for damages resulting from a loss on resales, or fitness for a particular use, the defendant must have had knowledge of the resales or particular use expected. Carpenter v. First National Bank, 119 Ill. 352; Union Foundry Works v. Columbia Iron & Steel Company, 112 Ill. App. 183; Hadley v. Baxendale, 9 Exch. 341.

It was a disputed question in this case whether the appellant had definite notice of the purpose for which the coffee in question was bought, and the instructions should have been explicit in laying down this rule as to damages. But although in given instruction 44 the rule was properly stated, and somewhat inadequately so in instructions 7 and 10, there were five others—6, 8, 14, 17 and 19—which told the jury in effect that if they

believed from the evidence that the appellant had broken its contract with the appellee in respect to the character of the goods in question, they should give to the appellee the "natural and proximate" damages resulting to him from such breach, but in no way noticed the necessity of the knowledge of, or notice to, the appellant of the purpose for which the goods were bought, or defined what were to be considered "natural and proximate" damages.  Instruction 11 was more definite in stating the damages which might be recovered and included those only recoverable if the appellant had the knowledge we have indicated, but was silent as to the necessity for such knowledge.  It ran as follows:

"If from all the evidence the jury find that Schleuter & Company bought from Sherman Brothers & Company certain coffees to fill certain sales and orders therefor from his trade which he then had, that without the knowledge or consent of Schleuter & Company said Sherman Brothers & Company substituted therefor a different and inferior coffee which, without fault of Schleuter & Company, caused said orders and coffee to be lost, then said Schleuter & Company are entitled to recover in this case as the jury may find from the evidence any damages suffered for any money or labor necessarily expended in shipping and selling the same, for any profits lost on such sales, for time and money reasonably expended in trying to prevent such loss and collect for said coffee, and the jury will so find in making up their verdict in this case."

We are not disposed to disturb a verdict for inaccurate instructions alone where correct ones have also been given, but where, in our opinion, the case is close and the instructions taken together are likely to have misled the jury, our duty to do so seems plain.  We should think it so in this case in consequence of the inharmoniousness of the instructions we have mentioned.

But a still greater defect and a greater disagreement in the instructions seem to us to exist in regard to another rule concerning the measure of damages in

a case like this. That rule is that though there were a breach of warranty and the vendor had notice of a specific use to which the goods purchased were to be put, yet if a purchaser by reasonable diligence could have discovered the defect in the goods before using them, he cannot hold the vendor for the damages which could have been avoided by the purchaser by the exercise of such reasonable diligence. This is only an obvious application of the general doctrine that an injured party must exercise reasonable diligence to minimize the damages resulting from the default of another.

This rule in the case at bar was of peculiar significance. Not only did the appellee claim the loss suffered by him on resales of the coffee involved in the transaction between him and the appellant herein complained of, but he also claimed that more than five times as much good coffee was rendered worthless to him by his blending it with the bad coffee in question, and that on the resales of the entire amount he suffered damage. It is evident that the amount recovered by him is too great if he could, by reasonable diligence, have discovered the inferior quality of the "bad" coffee delivered to him before making the blend. It was a disputed matter in this litigation whether he could and should have done so, and the instructions on this subject should have been accurate and harmonious.

One of the instructions given at the instance of the appellant correctly stated the law in this regard. It was as follows:

"Even though you believe from the evidence that Sherman Brothers & Company delivered to John F. Schleuter coffee of a quality inferior to that contracted to be delivered, yet if you further believe from the evidence that John F. Schleuter or his son, Alfred Schleuter, could have discovered said inferior quality by the use of reasonable diligence before the same was used, then no damages can be recovered by John F.

Schleuter on account of loss of business, profits from sales, or for expense of traveling expenses, commissions paid, freight charges, labor, blending, packing or storing of the coffees in question, but the damages recoverable are confined to the difference in value between the coffees actually delivered to John F. Schleuter and what the said coffees would have been worth had they been of the quality represented by Sherman Brothers and Company.''

The giving of this instruction may reasonably be held to have rendered unnecessary the giving of tendered instructions Nos. 39 and 40, which in different words practically set out the same doctrine. But other instructions which were given on this subject seem to us inconsistent with this accurate statement of the law and almost inevitably confusing and misleading to the jury. Thus instruction 7 told the jury that if Schleuter (the purchaser) after ''a reasonable opportunity to examine'' the coffee in question, caused it to be blended with other coffee and shipped it out without discovering its inferior quality, he could recover all ''proximate damages'' resulting, etc. It was not the opportunity but the reasonable use of it which was in question. Instruction 16 was still more objectionable, we think. It was as follows:

''If the jury believe from the evidence that Schleuter & Company bought from Sherman Brothers & Company certain coffees of a certain quality to be blended with other coffee and shipped to Schleuter's customers on certain orders before then given to Schleuter therefor, of all which Schleuter advised Sherman Brothers and Company at the time said coffee was bought, and also told Sherman Brothers & Company he was going away and said coffee purchased would be shipped out by his son during his absence, who was not a judge of coffee, and that thereafter Sherman Brothers & Company without authority delivered in the night time a different and inferior coffee, which was forwarded by the son to fill said orders in said

Schleuter's absence, supposing it to be all right; that then Sherman Brothers & Company will not be permitted to set up as a defense against damages claimed that Schleuter & Company should not have forwarded said coffee so furnished, and the jury will so find.''

The question of the extent of Alfred Schleuter's agency in representing his father, and the extent of his ability to detect such a quantity of ''blacks'' or ''blights'' in coffee as would make it improper and dangerous to blend with better coffee were questions for the jury. This instruction not only seems to be based on the erroneous theory that the supposition by the son that the coffee was ''all right'' excused the father from any negligence that might have existed in leaving his son to blend the coffee, but it is ambiguous and misleading as to the son's being ''a judge of coffee.''

Did the trial Judge mean to include, as a part of the condition, that the jury should believe that the father told Sherman Brothers & Company that his son ''was not a judge of coffee?'' Or is the clause ''who was not a judge of coffee'' to be read parenthetically?

If the first of these alternatives is the correct one, the instruction was erroneous, because there is no evidence of any kind tending to show that the appellee ever so informed the appellant, and the hypothesis should not have been presented to the jury. If the second alternative is to be accepted, the instruction assumes a disputed and important point; for although Alfred Schleuter himself testified that he ''was not at that time a judge of coffee,'' there was evidence in the cause, proper for the jury to consider, tending to establish a reasonable inference that he was competent to have detected the danger of including the coffee complained of in a blend to send out, and that by reasonable care he would have done so. And the instruction is plainly inconsistent with instruction 42.

For the errors indicated the judgment is reversed and the consolidated causes remanded to the Circuit Court.

*Reversed and remanded.*